551 F.2d 13
 Samuel ELLIS and Tenants Association of Park Towne Place, on
behalf of themselves and all other persons
similarly situated, Appellants,
v.
UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT et
al., Appellees,
Samuel Ellis and Tenants Association of Park Towne, Appellants.
 No. 76-1752.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 13, 1977.
Decided Feb. 24, 1977.
 
 Yale B. Bernstein, Bashman, Bernstein & Wolf, for appellants.
 Rex. E. Lee, Asst. Atty. Gen., Washington, D. C., David W. Marston, U. S. Atty., Philadelphia, Pa., Ronald R. Glancz, Washington, D. C., Maryann Clifford, for federal appellee.
 Richard M. Rosenbleeth, Andrew J. Gowa, Philadelphia, Pa., Blank, Rome, Klaus & Comisky, Obermayer, Rebmann, Maxwell & Hippel, for Park Towne.
 Before ROSENN and HUNTER, Circuit Judges and COOLAHAN,* District Judge.
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 This appeal from a judgment in the Eastern District of Pennsylvania presents, inter alia, the issue of whether tenants of nonsubsidized § 220[1] housing are entitled to a hearing prior to approval by the Department of Housing and Urban Development (HUD) of a rental increase requested by their landlord. We hold that such tenants are not entitled to a hearing, for the following reasons.
 
 I.
 
 2
 Park Towne Place is an apartment complex at 2200 Benjamin Franklin Parkway, Philadelphia, Pennsylvania, that was built in the late 1950's as part of an urban renewal project. Under § 220 of the National Housing Act,[2] HUD acted as guarantor of the two private mortgages taken by the partnership, Park Towne, which owns and operates the apartment complex. As part of the mortgage guarantee agreement, HUD required Park Towne to enter a Regulatory Agreement which establishes a ceiling of total rental income Park Towne partnership is entitled to receive. To have the ceiling increased, the agreement requires that Park Towne submit a written request to HUD.
 
 
 3
 Park Towne has, on the record before us, never exceeded the ceiling authorized by HUD. But it has requested, and received, increases in that ceiling. Two of those approved increases form the basis of this suit. On January 7, 1974, Park Towne requested a ceiling increase of $88,925, which would raise the approved monthly per room rental from $68.00 to $69.96. Documents reflecting an increase in electricity and fuel oil costs were attached; the operating costs increase was $88,925.
 
 
 4
 Before HUD acted on that request, Park Towne wrote HUD again, asking for a larger increase to match more recent increases in fuel oil costs. Again documents were attached showing an additional increase in operating costs of $73,025. Consequently, Park Towne amended its original request to $161,950. On February 6, 1974, HUD approved the requested increase, raising the maximum monthly per room rental to $72.36.
 
 
 5
 In June, 1974, Park Towne began notifying tenants that an "addendum" clause would be added to new or renewal leases, enabling Park Towne to pass on increased operating costs, such as fuel, electricity, and taxes, to the tenants. Because of the 90-day notice required in the leases, the increases resulting from the new clause did not take effect until October, at the earliest. The incremental increase caused by this clause did not raise the total rent over the authorized ceiling.
 
 
 6
 On August 12, 1974, Park Towne requested another ceiling increase. This time the increased operating costs were $130,606, resulting from electricity rates and real estate taxes. Park Towne requested a ceiling increase of $130,606, which was granted on September 9, 1974. This second ceiling increase raised the maximum monthly per room rental to $75.26.
 
 
 7
 In June, 1975, a tenant, Samuel Ellis, and the Tenants Association of Park Towne Place filed a complaint in the Eastern District of Pennsylvania, against Park Towne and HUD, alleging that ceiling increases made without an opportunity for the tenants to be heard denied the tenants due process of law and violated HUD's own regulations. They also alleged that the costs-pass-through addendum clause violated the Regulatory Agreement between Park Towne and HUD; a pendent state law escrow claim was also added. Plaintiffs requested class action certification and declaratory, injunctive, and monetary relief. In October, 1975, before filing an answer, defendant Park Towne moved to dismiss for failure to state a claim on which relief can be granted. HUD, too, instead of an answer, filed a motion 1) to dismiss, because plaintiffs lacked standing or because of failure to state a claim, or, in the alternative, 2) to grant summary judgment for defendants. Plaintiffs cross-moved for summary judgment. Memoranda and affidavits were submitted through November, 1975, in lieu of oral argument on the motions. In April, 1976, the district court entered summary judgment for the defendants, finding no subject matter jurisdiction[3] and no right to a hearing. We reverse on the jurisdictional ruling, but affirm that § 220 tenants have no right to a hearing on a request for HUD's approval of a requested rental ceiling increase.
 
 II.
 
 8
 The complaint alleged federal jurisdiction under 1) 28 U.S.C. § 1337,[4] because the National Housing Act is a statute regulating commerce, 2) 28 U.S.C. § 1361, mandamus to compel a federal officer to perform a clear duty,[5] 3) 28 U.S.C. § 1331, and 4) the Administrative Procedure Act,5 U.S.C. §§ 701-706.[6] The district court found no jurisdiction on any of the alleged bases. We reverse. In Davis v. Romney,490 F.2d 1360 (3d Cir. 1974), we held that the National Housing Act supports jurisdiction under 28 U.S.C. § 1337 as an act regulating commerce.
 
 
 9
 As for standing, the two-part requirement enunciated in Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970), 1) that plaintiffs allege an injury to themselves in fact, and 2) that the interest sought to be protected is "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question," is satisfied here. The plaintiff tenants who have had their rent increased have suffered an injury in fact, and one that "is likely to be redressed by a favorable decision," as required in Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). We also find the plaintiffs' interest in their rent to be an interest "arguably within the zone" of interests to be protected, or regulated, by the National Housing Act.[7] In Davis v. Romney, supra, we relied on "the interest of low-income families in obtaining 'decent' housing" to satisfy the zone of interests test. 490 F.2d at 1365. Here we are faced not with low income families in subsidized housing, but with families in nonsubsidized housing. The stated purpose of § 220 is "to aid in the elimination of slums and blighted conditions and the prevention of the deterioration of residential property." 12 U.S.C. § 1715k(a). By contrast, § 236 of the Act[8] has as its stated purpose "reducing rentals for lower income families." 12 U.S.C. § 1715z-1(a). We find the plaintiffs before us at least arguably within the zone of the interests to be protected by the National Housing Act for two reasons. First, as we said in Davis v. Romney, supra, for standing purposes we are to consider the entire Act and not any particular provision. Second, even focusing on § 220 alone, we think it plausible that the intended beneficiaries of a program to eliminate slums would arguably include those who are to occupy the new buildings. Therefore, we find these § 220 plaintiffs to have standing.
 
 III.
 
 10
 On the merits, however, we agree with the district judge that tenants in a nonsubsidized § 220 project are not entitled, either by the Due Process Clause[9] or by federal regulations,[10] to a hearing prior to HUD's approval of a rent increase. Neither are they entitled to a more limited right to be notified of, and to comment on, proposed rental ceiling increases.
 
 
 11
 Under the Due Process Clause of the Fifth Amendment the usual argument would be that the tenants have a legally protected interest in having their rent remain at a certain rate, and that they cannot be deprived of that property right without due process of law which would require that tenants at least have an opportunity to be heard prior to that deprivation. Cf. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Tenants have made that argument before. Under the National Housing Act, three types of housing projects have been the subject of federal suits on the issue of a tenant's right to be heard prior to a rent increase authorization by HUD: § 220 housing (12 U.S.C. § 1715k), designed for moderate to high income occupants; § 221 housing (12 U.S.C. § 1715l ) designed for low to moderate income occupants; and § 236 housing (12 U.S.C. § 1715z-1) designed for low income occupants.
 
 
 12
 In this circuit, we have not yet written an opinion on a tenant's right to be heard prior to a rental increase authorization under any of the three statutory programs.[11] We have, however, affirmed two district court judgments, both concerning occupants of § 236 housing requesting an opportunity to be heard prior to HUD's approving rent increases. In People's Rights Organization v. Bethlehem Associates, 356 F.Supp. 407 (E.D.Pa.), aff'd without opinion, 487 F.2d 1395 (3d Cir. 1973), the district court granted defendants' motion to dismiss the complaint for lack of jurisdiction and for failure to state a claim. Because the district court found no jurisdiction, its conclusion that plaintiffs had no right to be heard prior to rent increases was somewhat gratuitous. In the second case, Fleming v. R.I.G.H.T. Corp., Civil No. 73-2559 (E.D.Pa. June 19, 1974) (unpublished), aff'd without opinion, 511 F.2d 1393 (3d Cir.), cert. denied, 423 U.S. 848, 96 S.Ct. 88, 46 L.Ed.2d 70 (1975), occupants of § 236 housing made a similar argument and the district court, finding jurisdiction, did hold that plaintiffs were not entitled to be heard. Because we have affirmed that low income tenants do not have a legally protected property interest in the setting of their rent that would entitle them to be heard, it should come as no surprise that we do not find moderate to high income tenants to have that right either. Thus we join the District of Columbia Circuit in holding that tenants of § 220 housing are not entitled, under the Due Process Clause or under the National Housing Act, to an opportunity to be heard prior to a rental increase authorization by HUD. See Tenants' Council of Tiber Island-Carrollsburg Square v. Lynn, 162 U.S.App.D.C. 61, 497 F.2d 648 (1973), cert. denied, 419 U.S. 970, 95 S.Ct. 235, 42 L.Ed.2d 186 (1974).
 
 
 13
 On the same day that the District of Columbia Circuit held tenants of § 220 housing not entitled to a hearing, that court also held that tenants of § 221 housing (low to moderate income occupants) are entitled to a hearing, in Marshall v. Lynn, 162 U.S.App.D.C. 56, 497 F.2d 643 (1973), cert. denied, 419 U.S. 970, 95 S.Ct. 235, 42 L.Ed.2d 186 (1974). That distinction between low to moderate income and moderate to high income occupants apparently sparked appellants' argument before us, where they seem to have discarded the standard due process argument and argue instead that they have been denied equal protection of the law in that § 221 (subsidized, low income) tenants have been held to have a right to be heard and that a distinction between § 221 and § 220 tenants is arbitrary and capricious. We note first, however, that we have never held that § 221 tenants are entitled to a hearing. Moreover, a distinction between low income subsidized tenants and moderate to high income nonsubsidized tenants could not be said to be arbitrary and capricious. The legislative purpose of § 220 was the removal of urban blight not the provision of "decent housing" for any particular class of persons, e. g., the poor. Therefore, the decision to grant a hearing to tenants under § 221, where persons rather than neighborhoods are the legislative beneficiaries, would not logically compel the grant of a hearing to tenants under § 220. In addition, the owner of § 221 housing benefits directly from public funds, since the projects are subsidized by the government, to provide housing for a lower income group. The owner of § 220 housing, however, has financed the project solely with private capital, backed only by HUD's mortgage guarantee, given to improve neighborhoods. The differences in legislative aims and amounts of subsidies clearly prevent a distinction between § 220 and § 221 housing from being "arbitrary and capricious."
 
 IV.
 
 14
 We have considered the other contentions raised by appellants, and find them to be without merit. The order of the district court granting summary judgment for the defendants will be affirmed, not because there is no jurisdiction but because we find tenants of § 220 housing not entitled to a hearing, or to the opportunity to be heard, prior to a rent increase authorization by HUD.
 
 
 
 *
 James A. Coolahan, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 National Housing Act § 220, 12 U.S.C. § 1715k
 
 
 [2]
 Section 220 contemplates middle and upper income tenants
 
 
 [3]
 Technically the district court should have entered an order dismissing the case, having found no subject matter jurisdiction. See 1 Moore's Federal Practice P 0.60(4)
 
 
 [4]
 28 U.S.C. § 1337 provides:
 The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.
 
 
 [5]
 The duty must be "so plainly prescribed as to be free from doubt," Richardson v. United States, 465 F.2d 844, 849 (3d Cir. 1972) (en banc), rev'd on other grounds, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974)
 
 
 [6]
 Plaintiffs presumably relied on § 10 of the Act, 5 U.S.C. § 702, but we have held that § 10 does not grant jurisdiction to federal courts. E. g., Zimmerman v. United States, 422 F.2d 326 (3d Cir.), cert. denied, 399 U.S. 911, 90 S.Ct. 2200, 26 L.Ed.2d 565 (1970). For a criticism of that view, see K. Davis, Administrative Law of the Seventies § 23.02 (1976)
 
 
 [7]
 For a criticism of the zone of interests test itself, see K. Davis, administrative Law of the Seventies § 22.02-11 (1976)
 8 U.S.C. § 1715z-1.
 
 
 [9]
 Since the relevant defendant for the Due Process claim is HUD we apply the Fifth Amendment. Plaintiffs' alternate equal protection argument (that § 220 tenants are discriminated against vis-a-vis subsidized low-income tenants) is also cognizable under the Fifth Amendment. E. g., Mathews v. De Castro, 429 U.S. 181 n.1, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976)
 
 
 [10]
 Plaintiffs rely heavily on a tortuous argument that an inadvertent reference by HUD to Part 401 (24 C.F.R. 401) in an interim regulation on projects subject to local rent control gives them jurisdiction, standing, and the right to be heard. The interim rule was entitled "Part 403-Local Rent Control" a subject which does not concern Park Towne Place. The regulation governs procedures for nonsubsidized projects that are also subject to local rent control. Within the interim rule 403.3 was a reference to authorizing rent increases "pursuant to Part 401 of this Chapter," Part 401 deals with subsidized projects. When the final rule was published, the error was corrected. 40 Fed.Register 49319 (Oct. 22, 1975) ("The reference to 'Part 401 of this Chapter' in Subpart B was erroneously placed there and has been removed in the final rule. Section 403.6(a) pertains to unsubsidized housing and Part 401 of this Chapter pertains to rent increases in subsidized projects. Reference to Part 401 is now included in the appropriate section of Subpart C")
 
 
 [11]
 In Davis v. Romney, supra, occupants of § 221 housing complained that their homes had been approved by HUD despite noncompliance with the city's housing code