## Seymour Housing Authority Tenants Association et al. *v.* Housing Authority of the Town of Seymour et al.
## (6322)

Spallone, Norcott and Foti, Js.

Argued November 10, 1988—decision released May 16, 1989

*Richard P. Gilardi,* for the appellants (plaintiffs).

*Louis A. Silverstein,* for the appellees (defendants).

NORCOTT, J. The plaintiffs, the Seymour Housing Authority Tenants Association (association) and some members of the association in their individual capacity, appeal a decision by the trial court in an action brought against the defendants, the housing authority of the town of Seymour (authority) and Norman Ray, its executive director.[1]

After some members of the association received eviction notices from the authority, the plaintiffs brought this action alleging that the defendants had arbitrarily set the maximum allowable income limits for residence in the moderate income housing project in violation of General Statutes § 8-72a.[2] They contended that this allegedly improper determination resulted in their being overcharged for the continued occupancy of their apartments and improperly subjected them to eviction. In their prayer for relief, the plaintiffs requested, inter alia, a declaratory judgment that § 8-72a is unconstitutional, an injunction restraining the authority from attempting to evict them, an order that the income limits were arbitrary, unreasonable, unlawfully determined and void, an accounting of the

---

[1] The plaintiffs withdrew the appeal as to the other defendants, the Connecticut housing commission and the Connecticut department of housing.

[2] General Statutes (Rev. to 1983) § 8-72a provided: "Maximum income limits: Factors to be considered. In fixing maximum income limits under section 8-72, the authority or the developer and the commissioner of housing shall take into consideration (1) the latest average wage as computed by the labor commissioner for the city or town served by the authority, (2) the number of vacancies in the projects under the authority's control, and (3) the number of applications for admission to tenancy which are refused because of income disqualification." The legislature amended the statute in 1984 to add another factor, the town's latest median income. The amendment does not apply, however, to this action.

improper surcharges paid by the plaintiffs and a distribution thereof to the plaintiffs.[3]

The trial court determined that the authority had violated § 8-72a by not considering the average wage for the town of Seymour in its computation of the maximum income limits, and granted the injunctive relief requested, restraining the defendants from attempting to evict the plaintiffs until the defendants properly determined the maximum income limits. Although the court held that it lacked jurisdiction to make a declaratory judgment because proper notice had not been given to all interested parties, it nevertheless held that the statute in question was not unconstitutional on either due process or equal protection grounds or as an unconstitutional delegation of legislative power. The court also held that the plaintiffs did not have a constitutionally protected property interest in retaining their incomes that required due process protection, and that the plaintiffs were not entitled to an accounting and distribution of the unlawfully accumulated surcharge.

On appeal, the plaintiffs claim that the trial court erred in determining (1) that the plaintiffs did not have property interests entitled to constitutional protection and (2) that they were not entitled to an accounting and distribution of any excessive surcharges paid.[4] We find error in part.

---

[3] Additionally, the prayer for relief requested both an order directing the authority to remedy allegedly hazardous conditions in the apartments and an award of attorney's fees. The plaintiffs do not raise the hazardous conditions issue on appeal and, although they mention that the trial court denied their requests for attorney's fees, they do not brief the issue. We therefore deem these claims abandoned. See *Morning Star Holding Co.* v. *Kostopoulos,* 12 Conn. App. 593, 595, 533 A.2d 569 (1987).

[4] The plaintiffs claim that the court's denial of the requested accounting and distribution was based on its erroneous determination of their constitutional claim. We do not find support, however, in the memorandum of decision for this assertion.

The trial court's memorandum of decision reflects that the parties stipulated to the following facts relevant to this appeal. Since 1976, some resident plaintiffs have earned annual incomes purportedly exceeding the maximum limits set out in General Statutes § 8-72a. Those plaintiffs have continued to occupy their units since that time, with the approval of the defendants, under a surcharge arrangement that requires over-income residents to pay, in addition to their rent, a monthly surcharge of 2 percent of their incomes that is in excess of the maximum limit. The maximum income limit has remained at $11,000 since 1981. In 1982, 46 percent of the tenants were classified as over-income. Prior to 1982, the authority made no attempt to evict over-income tenants. Also prior to 1982, the plaintiffs questioned the basis and formula for setting maximum income limits and surcharges.

In 1982, the authority moved to evict all tenants who had been classified as over-income for at least two years. Without prior notice or an opportunity for tenants to be heard, the authority, in March, 1982, issued sixty-day notices to vacate pursuant to General Statutes § 8-73.[5] Despite the parties' reported agreement

[5] General Statutes (Rev. to 1989) § 8-73 provides: "EVICTION OF FAMILIES HAVING INCOME OVER MAXIMUM LIMITS. WAIVER OF EVICTION REQUIREMENTS. (a) A tenant in a moderate rental housing project shall vacate the dwelling unit occupied by him not later than sixty days after the housing authority or developer has mailed to such tenant, properly addressed, postage prepaid, written notice that the annual income of such tenant's family, determined under section 8-72, is in excess of that permitted for continued occupancy of such dwelling unit under said section. Upon the failure of such tenant to vacate such dwelling unit on or before the expiration of such sixty-day period and so long as such tenant continues to occupy such dwelling unit after the expiration thereof, such tenant shall be obligated, notwithstanding the provisions of section 8-72, to pay to the authority or developer monthly as rent for such dwelling unit an amount equal to the going rental therefor as fixed by the authority or developer plus an amount equal to two per cent of the excess of the annual income of such family over that permitted for continued occupancy of such dwelling unit under section 8-72.

to suspend further action pending a meeting among them to discuss the evictions and the policy on setting maximum income limits, some, but not all, over-income tenants received notices to quit before the meeting took place. No further action pursuant to these notices had been taken by the time of trial.

The procedure for setting maximum limits has not changed in twenty years. No policies or guidelines are given to authority members who set the limits, nor is there a schedule for reconsidering or adjusting the limits. When a commissioner moves to set a limit, the authority's executive director consults an accountant for an economic overview of the project and then reports to the state housing commissioner. The report contains the dollar amount of the maximum limit requested by the executive director and the number of vacancies and pending applications for admission to the project. In the time that this procedure has been followed, the state department of housing has approved every request for a particular income limit submitted by the defendant authority. Neither the executive director nor any commissioner or other authorized person

"(b) Notwithstanding the provisions of subsection (a), if the eviction of such tenants would result in or increase the number of vacancies in such project, the housing authority or developer may request approval of the commissioner of housing to permit continued occupancy by tenants having an annual income over the maximum limits established for such project and rental of existing vacant units to tenants having an annual income over such maximum limits. If the commissioner finds that the vacancy rate which would result from refusal to grant such approval may result in an inability of the project to provide an income adequate for debt service, if any, administration, including the state service charge, other operating costs and reserves for repairs, maintenance, replacements and collection costs, he may approve such occupancy for a period of one year, subject to renewal for additional one-year periods. The amount fixed as rent for units so occupied pursuant to this subsection shall be determined as provided in subsection (a) but in no event shall such rent be in excess of one hundred thirty-three percent of the going rental as established pursuant to said section 8-72."

has ever considered the average wage for the town of Seymour in computing the maximum limit.

The parties have also stipulated to the existence of an amount of annual income derived from the rental of seventy-two units that has remained the same since 1977. They also agreed on the total amount of the surcharges paid by over-income tenants since 1977, and on the amount of cash and additional total reserves accumulated by the authority since 1977.

I

The plaintiffs' first claim is that the trial court erred in finding that they did not have property interests protected under the federal and state constitutions.[6] Although the plaintiffs have withdrawn their appeal on the issue of the facial unconstitutionality of the statute, they still claim a constitutional violation in the failure of the defendants to consider all statutorily mandated factors, and seek a remedy of return of the improperly collected surcharges. The plaintiffs' approach to this issue is a confusing one, with intertwined claims of right and remedy, and of equal protection and due process violations; the latter seemingly encompassing both procedural and substantive due process claims and the procedural claim containing both notice and confiscation arguments.

The only discernible constitutional claim supported by any legal authority appears to be the plaintiffs' proposition that tenants of government subsidized housing projects have certain constitutionally protected property interests requiring procedural due process protections. The cases cited by the plaintiffs in support

---

[6] Although the plaintiffs claim a violation of their due process rights under both the federal and state constitutions, they have not provided a separate analysis of their state claim. We will therefore consider only the federal claim. *State* v. *Mercer*, 208 Conn. 52, 67 n.9, 544 A.2d 611 (1988); *State* v. *Hall*, 17 Conn. App. 502, 505 n.1, 554 A.2d 746 (1989).

of this claim stand for the proposition that such tenants have property interests in not having their rent increased and in continued residence in public housing, and that these interests are subject to limited constitutionally mandated process. *Escalera* v. *New York City Housing Authority,* 425 F.2d 853 (2d Cir. 1970), cert. denied, 400 U.S. 853, 91 S. Ct. 54, 27 L. Ed. 2d 91 (1970); *Owens* v. *Housing Authority of City of Stamford,* 394 F. Supp. 1267 (D. Conn. 1975); *Burr* v. *New Rochelle Municipal Housing Authority,* 347 F. Supp. 1202 (S.D.N.Y. 1972), modified, 479 F.2d 1165 (2d Cir. 1973); *Housing Authority* v. *McKenzie,* 36 Conn. Sup. 515, 412 A.2d 1143, cert. denied, 179 Conn. 751, 405 A.2d 673 (1979). The process found due such tenants consists of varying forms of notice and varying levels of hearing rights before eviction or before rent or additional charges may be levied.[7] These cases, however, are inapposite to the plaintiffs' claims on appeal, which, although asserting protected property interests, do not allege violations of their rights to prior notice or an opportunity to be heard, but rather request reimbursement of improperly paid surcharges based on a claimed constitutional right to retain their incomes.[8]

---

[7] The parties have not cited any of the cases that have held that the leasehold interests of government subsidized tenants do not require constitutional due process protection. See *Ellis* v. *United States Department of Housing & Urban Development,* 551 F.2d 13 (3d Cir. 1977); *Grace Towers Tenants Assn.* v. *Grace Housing Development Fund Co.,* 538 F.2d 491 (2d Cir. 1976); *Harlib* v. *Lynn,* 511 F.2d 51 (7th Cir. 1975); *Paulsen* v. *Coachlight Apartments Co.,* 507 F.2d 401 (6th Cir. 1974); *Tenants' Council of Tiber Island-Carrollsburg Square* v. *Lynn,* 497 F.2d 648 (D.C. Cir. 1973), cert. denied, 419 U.S. 970, 95 S. Ct. 235, 42 L. Ed. 2d 186 (1974); *McKinney* v. *Washington,* 442 F.2d 726 (D.C. Cir. 1970); *People's Rights Organization* v. *Bethlehem Associates,* 356 F. Supp. 407 (E.D. Pa. 1973), affd., 487 F.2d 1395 (3d Cir. 1973).

[8] Although the plaintiffs are claiming that they have protected property interests in both continued residence and in retention of their incomes, because they received the relief requested enjoining their pending evictions until a proper income limit is set, the former interest is not an issue in this appeal.

Because of the plaintiffs' shotgun approach to the constitutional issue, they have not squarely presented an argument that the limited procedural process provided by some courts to tenants of government subsidized housing should be extended to encompass a constitutional due process right to have the defendants comply with the procedures for determining the maximum income limits as set out in General Statutes § 8-72a, and a constitutional right to a monetary remedy for a statutory violation. We therefore do not find this an appropriate case for determining the extent of any constitutional procedural safeguards to which tenants of government subsidized housing may be entitled.

Even assuming the plaintiffs have a property interest in retaining their incomes that might require some due process protection, we conclude that the allegations in their complaint do not correspond to the facts that gave rise to the constitutional remedies in the cases that they cite in support of their claim. Therefore, even if it were erroneous for the trial court not to recognize any such protected interest, it was not error to refuse the constitutionally based remedy requested. We also note that the plaintiffs' wholesale constitutional attack on the court's holding implies their belief that the failure of the authority to comply with the requirements of § 8-72a necessarily violates some constitutional right. Such a belief ignores the fact that we are a nation of limited government and that not every statutory violation implicates constitutional rights. See *Yale Auto Parts, Inc.* v. *Johnson,* 758 F.2d 54 (2d Cir. 1985).

II

The plaintiffs also claim that it was error for the trial court to refuse to order an accounting and distribution of the funds collected by the defendants from the plaintiffs in violation of § 8-72a.

The trial court found that the plaintiffs did not meet the requirements necessary for an action for accounting and therefore that they were not entitled to a distribution of the illegally obtained surcharge payments. This treatment of the request for an accounting and distribution as an "action" for accounting was improper. The plaintiffs' prayer for relief included a request for "an accounting of the surplus accumulated by the Defendant Authority as a result of the illegal surcharges paid by the Plaintiff[s] to said Authority [and a] distribution to the Plaintiffs of any unlawfully accumulated surplus received by the Defendants from the Plaintiffs." The pleadings and arguments in the trial court indicate that the request for a "distribution" was, in effect, a request for the return of any surcharges collected in violation of General Statutes § 8-72a or as a consequence of the application of the allegedly unconstitutional statute.

Because of the complexity of the financial data involved in the assessment of the surcharges, at the time the plaintiffs filed the complaint they did not know how much they had paid in improper charges. They therefore requested a calculation or "accounting" to determine the amount of money, if any, that was to be returned to each plaintiff if the court found them entitled to reimbursement.

The trial court's mischaracterization of the request for relief led it both to misapply the law of an action for accounting and to conclude erroneously that because the plaintiffs were not entitled to relief in an action for accounting, they were not entitled to a distribution. A decision on whether the plaintiffs are entitled to a distribution—in this case a reimbursement—of improperly collected money, is not dependent upon whether they are entitled to an accounting or calculation of the amount of such money. The plaintiffs' entitlement to recovery must be determined before

reaching the issue of whether a calculation by the defendants is necessary to allocate properly any funds to be distributed among the plaintiffs.

Although we have concluded that the plaintiffs have not presented a constitutional route by which they may recover the improperly collected funds, there remain other possible means of recovery. These include statutory and equitable considerations. A statutory remedy does not appear to be available in this case because there is no language in chapter 128 that provides or indicates legislative intent to provide a remedy, monetary or otherwise, for violations of § 8-72a. Had the legislature intended to provide such a statutory remedy, it would have specifically written it into the statute. See *In re Petition of State's Attorney, Cook County, Illinois,* 179 Conn. 102, 106, 425 A.2d 588 (1979). " '[I]t is not the province of a court to supply what the legislature chose to omit.' " *Glastonbury Co.* v. *Gillies,* 209 Conn. 175, 181, 550 A.2d 8 (1988), quoting *Federal Aviation Administration* v. *Administrator,* 196 Conn. 546, 549, 494 A.2d 564 (1985).

This leaves the issue of equitable considerations. Equity will intervene when legal relief is unavailable or inadequate. *Norwich* v. *Lebanon,* 200 Conn. 697, 711, 513 A.2d 77 (1986). Because the determination of what equity requires in a particular case is a matter within the discretion of the trial court; *Reynolds* v. *Ramos,* 188 Conn. 316, 320, 449 A.2d 182 (1982); *Hall* v. *Dichello Distributors, Inc.,* 6 Conn. App. 530, 540, 506 A.2d 1054, cert. denied, 200 Conn. 807, 512 A.2d 230 (1986); it is not for this court to determine such issues for the first time on appeal. The plaintiffs' prayer for relief requested, inter alia, "any other relief appropriate in law and equity." A general prayer for equitable relief is broad enough to permit "the long arm of equity" to include whatever relief "the court may from the nature of the case deem proper. Any relief can be

granted under a general prayer which is consistent with the case stated in the complaint and is supported by the proof 'provided the defendant will not be surprised or prejudiced thereby.' 1 Whitehouse, Equity Practice (1915 Ed.) § 119, p. 223." *Cottrell,* v. *Cottrell,* 106 Conn. 411, 420, 138 A. 458 (1927); *Pellegrino* v. *O'Neill,* 193 Conn. 670, 692, 480 A.2d 476 (*Peters, J.,* dissenting), cert. denied, 469 U.S. 875, 105 S. Ct. 236, 83 L. Ed. 2d 176 (1984).

Because the trial court erroneously determined that the plaintiffs were not entitled to reimbursement of improperly collected funds solely because they did not meet the requirements for an action for accounting, the trial court did not consider the possibility of return of the improperly collected funds on the basis of any equitable considerations supported by the facts alleged and proved at trial. For this reason, we find error and remand for the trial court to determine whether there are equitable grounds that require the return of the improperly calculated surcharges. The court will be in a position to view the impact of such a remedy on the plaintiffs as well as on the defendant authority and, by balancing the equities, "fashion relief 'molded to the needs of justice.' *Montanaro Bros. Builders, Inc.* v. *Snow,* 4 Conn. App. 46, 54, 492 A.2d 223 (1985)." *Hall* v. *Dichello Distributors, Inc.,* supra.[9]

If, on remand, the court determines that equity requires reimbursement of the improperly collected

---

[9] An issue to be considered by the court in weighing the equities of this case would include the impact of a judgment for the plaintiffs on the authority's ability to continue to provide moderate income housing. This issue involves consideration of the extent and propriety of the authority's reserve accounts, the statutory prohibition against attaching the authority's property; General Statutes § 8-65; the statutory requirement that the authority operate on a not for profit basis; General Statutes § 8-72; and whether any of these considerations could result in the authority's either being unable to pay the judgment or passing any judgment costs on to the plaintiffs or any future tenants of the project in higher rent charges.

funds, we note that due to the complicated nature of the financial transactions among the parties, the plaintiffs would be entitled to an accounting by the defendants to determine the amount to be returned to each of the plaintiffs.

Although at trial the authority produced a calculation of the amounts paid as surcharges during the plaintiffs' tenancies for the years 1976 through 1986,[10] the more complicated aspect of the calculation involved in this case, and the one that the plaintiffs are unable to ascertain, is the proper determination of the maximum allowable income limits for the period of 1976 through 1986. Although General Statutes § 8-72a provides factors for the authority to consider in setting the limits, it was admitted at trial that there is no mathematical formula for computing these limits. Without such a basis for weighing the various factors, the statutory determination of the proper limits is complex and vests the defendants with a degree of latitude and discretion in their determination.

The court's order that the defendants compute the proper income limits before proceeding with evictions of over-income tenants required a determination solely of the correct *current* limits. If equity is to require reimbursement of funds already paid, it will be necessary

---

[10] Although the plaintiffs claim that they are entitled to a calculation of amounts improperly paid from 1970 through 1976, we find that their complaint alleged improper action and requested a remedy only for action taken by the defendants from 1976 through 1986. Because the right of a plaintiff to recover is limited to the allegations in the complaint; *Matthews* v. *E.M.C. Corporation,* 190 Conn. 700, 705, 462 A.2d 376 (1983); *Krattenstein* v. *Thomas,* 7 Conn. App. 604, 610, 509 A.2d 1077 (1986); the plaintiffs in this case are not entitled to a calculation or recovery of money paid from 1970 to 1975. Even though the stipulation of facts as set out by the trial court relates to the pre1976 actions of the defendants, " '[f]acts found but not averred cannot be made the basis for a recovery.' *Malone* v. *Steinberg,* 138 Conn. 718, 721, 89 A.2d 213 (1952)." *Savin* v. *National Personnel Consultant, Inc.,* 4 Conn. App. 563, 567, 495 A.2d 1109 (1985).

to determine not only the proper current income limits, but also the proper limits and surcharges for the years 1976 through 1986. It will also be necessary to compute any setoffs to this amount; for instance, what amounts the tenants would have paid in additional rent, given lower surcharges. Clearly such complicated determinations require computation by the defendants.

### III

The defendants contend, for the first time on appeal, that the plaintiffs are guilty of laches because they have questioned the basis and formula for setting the maximum income limits since 1970 but did nothing about it until they brought this suit in 1982. First, we note that any relief the plaintiffs could receive would be based on the 1976 date set out in their complaint. See footnote 10, supra.

"A party may . . . be barred from seeking equitable relief by the defense of laches, which applies only if there has been an unreasonable, inexcusable and prejudicial delay in bringing suit. 'A conclusion that a plaintiff has [not] been guilty of laches is one of fact for the trier and not one that can be made by this court, unless the subordinate facts found make such a conclusion inevitable as a matter of law.' *Papcun* v. *Papcun,* 181 Conn. 618, 621, 436 A.2d 282 (1980)." (Citations omitted.) *Dunham* v. *Dunham,* 204 Conn. 303, 327, 528 A.2d 1123 (1987). " 'Delay alone is not sufficient to bar a right'; the delay in bringing suit must be 'unduly' prejudicial." *Cummings* v. *Tripp,* 204 Conn. 67, 88, 527 A.2d 1230 (1987), quoting *Owens* v. *Doyle,* 152 Conn. 199, 207, 205 A.2d 495 (1964). "The burden is on the party alleging laches to establish that defense." *Cummings* v. *Trip,* supra. " 'The principal element in applying the doctrine of laches is the resulting prejudice to a defendant, rather than the delay itself.' " Id., 89, quoting 3 A. Rathkopf & D. Rathkopf,

Law of Zoning and Planning § 45.06, p. 45-73. The defendants do not argue that the delay in bringing this action caused any prejudice, but only that it was inexcusable. We will not, therefore, conclude on appeal that it is inevitable as a matter of law that the plaintiffs are guilty of laches.

There is error in part and the case is remanded with direction to determine whether equitable considerations require reimbursement of improperly collected surcharges, and, if so, for a calculation of the amount to be reimbursed to each plaintiff.

In this opinion the other judges concurred.