[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
RULING ON MOTION FOR JUDGMENT
On December 7, 1992, the plaintiff, Andrew Sardi, filed a two count amended complaint against the defendants; Metpath, Inc. and Metpath New England, Inc.[1] The gravamen of the complaint is that the plaintiff sold two corporations to Canberra Clinical Laboratories, Inc. (Canberra) on or about February 25, 1983. The present defendants are the successors to Canberra. Count one alleges that the defendants have failed to pay certain sums that are due to the plaintiffs. Count two seeks an accounting.
On April 7, 1994, the defendants filed an answer and five special defenses. The court is concerned about the first special defense, which alleges that the statute of limitations (General Statutes § 52-576) bars the action, and the fifth special defense, which alleges that laches bars the action.
On August 26, 1993, the defendants filed a motion to order proof at trial. In this motion, the defendants requested that the court hear evidence on the statute of limitations and enter a decision on that issue before hearing other issues because the statute of limitations could resolve the case.[2] The court heard evidence on this issue at a hearing beginning on March 28, 1995.
The evidence presented at the hearing revealed the following facts. On February 25, 1983, the plaintiff agreed to a contract for sale of two businesses with Canberra. The purchase and sale agreement is exhibit 1. A promissory note for $205,000.00 was an exhibit to the purchase and sale agreement and was executed the same day. The promissory note provided that Canberra would pay a total of $205,000.00, plus interest at the annual rate of nine and one-half percent, in eighteen equal quarterly payments of CT Page 8128 $14,122.89. These payments were due on the last day of the months of May, August, November and February. The first quarterly payment was due on May 31, 1983. The purchase and sale agreement also provided that the plaintiff was to receive incentive payments. The promissory note contained an acceleration clause.[3]
The evidence further revealed that the plaintiff and Canberra disputed amounts due. On June 7, 1983, Canberra's vice-president of finance sent the plaintiff a check for $9,535.64 as the first payment due under the note. On June 8, 1983, the plaintiff's attorney, Seth O.L. Brody, sent Canberra a letter stating that Canberra has "failed to make the payment of $14,128,89 due on May 31, 1983, as required by the terms of your promissory note." The letter concluded that if payment were not received, "the entire amount of said note shall thereupon become due and payable without further notice to you." On June 10, 1993, Canberra sent the plaintiff a check for $2,373.10 to correct an accounting error. See Exhibits 4-6 Canberra's first payment totalled $11,908.74.
On September 9, 1983, Brody sent Canberra a letter stating that Canberra has "failed to make the full payment due on August 31, 1983 under said Note." The letter concluded that if payment were not received, "the entire amount of said note shall thereupon become due and payable without further notice to you." On September 9, 1983, Brody sent a letter to the attorney representing Canberra. This letter began by stating "[e]nclosed is a copy of my notice to Canberra of its default under the Note." One reason for the default under the note was the problem with accounting the amount of the May 31, 1983 payment. See Exhibits 7 and 8. Brody testified at the hearing that Canberra paid $11,908.74 on September 1, 1983.
Between June, 1983 and March, 1989, the parties had a series of problems arranging an accounting of the businesses that the plaintiff sold. An accounting was necessary because the profitability of the businesses affected the amount of money owed to the plaintiff.
The plaintiff testified that he received seven payments in total. Each payment was for $11,908.74. Canberra did not pay any amount for November 30, 1994.
"No action. . . on any contract in writing, shall be brought but within six years after the right of action accrues." General Statutes § 52-576 (a). CT Page 8129
The parties dispute when the statute of limitations begins to run. The plaintiff argues that his cause of action accrued on November 30, 1984 when Canberra did not make any payment due under the promissory note. The defendants argue, instead, that the operative date is September 19, 1983.[4]
"The true test is to establish the time when the plaintiff first could have successfully maintained an action. That is, an action cannot be maintained until a right of action is complete and, hence, the statute of limitations cannot run before that time. . . .In an action for breach of contract, the cause of action is complete upon the occurrence of the breach, that is, when the injury has been inflicted. Kennedy v. Johns-Manville SalesCorporation, 135 Conn. 176, 180, 62 A.2d 771 (1948)." (Citation omitted.) Gaylord Hospital v. Massaro, 5 Conn. App. 465, 467,499 A.2d 1162 (1985). "Applied to a cause of action, the term to accrue means to arrive; to commence; to come into existence; to become a present enforceable demand." Balboa Ins. Co. v. Zaleski,12 Conn. App. 529, 533-34, 532 A.2d 973 (1987), cert. denied,206 Conn. 802, 535 A.2d 1315 (1988).
In this case, the cause of action accrued on September 19, 1983. By this date, which is ten days after the September 9, 1983 demand letter, the contract required Canberra to pay 14,122.89. Canberra did not pay this amount and in response, Brody sent a notice that the plaintiff accelerated the note.[5]
The plaintiff was required to bring the action for breach of contract within six years of when he was injured. General Statutes52-576. The action commenced on November 28, 1990, when the sheriff served the defendants. See footnote 1, supra. Because the court finds that the accrual date is September 19, 1983, the court holds that the statute of limitations bars the action.
The defendants contend that after the plaintiff accelerated the note in September, 1983, all other payments were due immediately. The defendants' argument suggests that although quarterly payments might have been due and even paid under the promissory note as drafted, the acceleration commences the running of the statute of limitations on all the payments. The plaintiff did not address this argument.
In Piantedosi v. Florida, 186 Conn. 275, 276, 440 A.2d 977
(1982); the Connecticut Supreme Court stated, in dicta, "[i]f the CT Page 8130 plaintiff had exercised his option to accelerate, the cause of action would have accrued at the time of the plaintiff's demand, and the plaintiff's present action would have been barred by the statute of limitations." Piantedosi is the only Connecticut case that was presented to the court that addressed the issue of whether acceleration of payments under a note begins the running of the statute of limitations for all payments.
In addition to the language in Piantedosi, there is support for this proposition from other jurisdictions. See 5 S. Williston, Contracts § 2027 (3d Ed. Jaeger 1970) (stating that the statute of limitations begins to run when the payments are accelerated). Accordingly, the court rules that the plaintiff was required to bring an action to recover any payments due on the promissory note within six years of accelerating the note on September 19, 1983.
Although the court's ruling on this issue disposes of the matter, the applicability of the doctrine of laches to the facts of the present case requires further comment by this court. "Laches consists of two elements. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant . . . . Absent prejudice to the defendant, the mere lapse of time does not constitute laches." (Citation omitted.) FederalDeposit Ins. Co. v. Voll, 38 Conn. App. 198, 210, ___ A.2d ___ (1995). "The burden is on the party alleging laches to establish that defense." Seymour Hsng. Auth. Tenants v. Housing Auth.,18 Conn. App. 393, 405, 558 A.2d 1002 (1989).
The court finds that the defendants have failed to meet their burden of presenting facts to prove both elements of laches. The plaintiff has delayed bringing this action. Even if the court were to adopt the date proposed by the plaintiff for the accrual of the cause of action, November 30, 1984, the plaintiff brought suit only two days before the statute of limitations barred the action. The plaintiff testified that he considered bringing suit in 1983 and consulted Brody. In May, 1988, the plaintiff consulted different attorney who drafted a complaint that was never filed. Exhibit 17-18. The plaintiff testified that he did not file an action because he believed that the defendants would stop making payments on the promissory note if he instituted a lawsuit against them. This evidence suggests that the plaintiff made a choice with regard to bringing this action. Therefore, the plaintiff does not have a reasonable excuse for delaying the action. See Century MortgageCo. v. George, Superior Court, judicial district of Waterbury, Docket No. 095538, (January 12, 1993, Blue, J.) (stating "[a] CT Page 8131 sophisticated party who knows of an unauthorized payment and does not complain for years after the fact may be estopped from asserting the lack of authorization in a subsequent action to collect the debt.")
The court, however, cannot find that the defendants have suffered prejudice because of this delay. The defendants did not present any evidence at the hearing that the delay has prevented them from responding to the plaintiff's claims. Accordingly, the court rules that the defendants have not met their burden of proving that laches bars the action.
Regardless of the decision on the issue of laches, the statute of limitations bars the action. On this ground, the court enters judgment on behalf of the defendants. A trial on the other issues is not necessary.
Dated at Bridgeport, Connecticut, this 26th day of July, 1995.
RICHARD J. TOBIN, JUDGE