[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In Connecticut, the property tax has probably always been the principal source of revenue for cities and towns; it remains so today. State Tax Cases Reporter (CCH), p. 2011, ¶ 20-001 — ¶ 20-002; cf. Horton v. Meskill, 31 Conn. Sup. 377, 383, 332 A.2d 113
(1974), affirmed, 172 Conn. 615, 630, 376 A.2d 359 (1977). The tax, which has existed in Connecticut since 1650; 1 Colonial Records of Connecticut (1636-1665), Code of Laws of 1650, pp. 547-551; 1Connecticut Tax Reporter (CCH), p. 3551, ¶ 20-010 (1996); is imposed both on real and personal property. Since 1917, state law has required that the assessors of all towns and cities conduct a general revaluation of real property every ten years. Public Act, 1917, ch. 214.[1] Over the ensuing eighty years, the term "decennial revaluation" has become a term of art in Connecticut jurisprudence.[2] In 1994, and again in 1995 and 1996, the General Assembly authorized municipalities to defer the revaluation process. The principal issues in this action are whether that legislation is constitutional and whether it has been properly implemented by the city of Norwalk.
In 1993, as required by General Statutes § 12-62 (a),[3] the City of Norwalk (Norwalk) conducted a decennial revaluation of all real property.[4] The prior revaluation had been in 1983. Based upon the October 1, 1993 decennial revaluation,[5] Norwalk established a proposed 1993 grand list. The plaintiffs, GTE Realty Corporation (GTE); Cambridge Associates; Stafford Higgins Industries, Inc. CT Page 2774 (Stafford Higgins); Richard Hodgson (Hodgson); Walter Baum (Baum); and JoMur Associates appealed their assessments, based on the proposed October 1, 1993 grand list, to the Norwalk Board of Tax Review.
On April 12, 1994, Norwalk's Board of Estimate and Taxation established a final budget and mill rate based not on the October 1, 1993 revaluation, but on the October 1, 1983 revaluation. On or about June 1, 1994, while the plaintiffs' appeals were pending, tax bills were issued, accompanied by a letter from Norwalk Mayor Frank J. Esposito stating that implementation of the October 1, 1993 decennial revaluation was postponed. The Norwalk Board of Tax Review did not hold hearings prior to issuance of these tax bills to hear potentially aggrieved taxpayers' appeals of the October 1, 1983 revaluation.
On June 9, 1994, Governor Weicker approved Public Act, May Special Session, No. 94-4 (hereafter Public Act No. 94-4). That act, now codified as General Statutes (Rev. 1995) § 12-62h, permits the legislative body of a municipality to stay implementation of a decennial revaluation for up to two years.[6] On June 28, 1994, the Norwalk Common Council suspended its rules and, purporting to act pursuant to Public Act No. 94-4, entertained and passed a resolution not listed on its agenda, resolving to authorize staying implementation of Norwalk's October 1, 1993 decennial revaluation for up to two years. On December 27, 1994, the Norwalk Common Council passed a motion to stay implementation of its 1993 revaluation until July 1, 1996.[7]
Pursuant to General Statutes § 12-119,[8] Stafford Higgins, Baum, Hodgson, and JoMur Associates[9] (collectively referred to herein, together with Cambridge Associates, as "the plaintiffs") filed a verified appeal[10] against the City of Norwalk and certain city officials.[11] GTE and Cambridge Associates each filed a motion to intervene, which were granted by the court (Maiocco, J.). These plaintiffs then filed complaints alleging that the taxes levied against their respective properties were illegal, pursuant to General Statutes § 12-119.[12]
"In order to follow the claims as made by the plaintiff[s] in [their] brief[s] we will list them seriatim and discuss them in that order." New Haven v. Public Utilities Commission,165 Conn. 687, 713, 345 A.2d 563 (1974). The plaintiffs and GTE make the following claims: first, that the action of the Norwalk Common Council on March 8, 1994 violated the Freedom of Information Act; CT Page 2775 second, that the mayor's request to Secretary Cibes for a deferment of the implementation of the 1993 revaluation failed to comport with statutory requirements; third, that the mayor's unilateral decision to postpone the implementation of the 1993 decennial revaluation was illegal; fourth, that the adoption of the 1994-95 budget, establishment of mill rates and calculation and issuance of tax bills were done in derogation of statutes, when the Board of Tax Review had yet to complete its business; fifth, that the June 28, 1994 vote of the Common Council purporting to ratify prior action was illegal; sixth, that Public Act No. 94-4 is unconstitutional because: (a) it unconstitutionally delegates legislative authority to municipalities; (b) its retroactive application denies the plaintiffs of vested rights; (c) it impermissibly interferes with plaintiffs' due process rights. Finally, in addition to certain of the foregoing claims, GTE contends that Public Act No. 94-4 deprives it of equal protection.[13]
"Plaintiffs' principal arguments are that Public Act No. 94-4, an enabling act permitting municipalities to — at their discretion — postpone implementation of their decennial real property tax revaluations, is constitutionally deficient due to the lack of standards attending the Act's delegation of authority to the municipal level, and that the operation of the Act impermissibly divests Plaintiffs and property owners of certain due process rights." (Plaintiffs' Reply to Defendants' Post-Trial Brief, pp. 1-2.)
 I
Preliminarily, it is necessary to address the question of standing. "`In order for a party to challenge the constitutionality of a statute or an action predicated thereon he must have standing.' Shaskan v. Waltham Industries Corporation, 168 Conn. 43,48-49, 357 A.2d 472 (1957)." St. John v. State, 9 Conn. App. 514,522, 520 A.2d 612 (1987). "`The fundamental aspect of standing . . . [is that] it focuses on the party seeking to get his complaint before [the] court and not on the issues he wishes to have adjudicated. Flast v. Cohen, 392 U.S. 83, 99, 88 S.Ct. 1942,20 L.Ed.2d 947 [1968]. Hartford Kosher Caterers, Inc. v. Gazda,165 Conn. 478, 485, 338 A.2d 497 (1973). Standing is not a technical rule intended to keep aggrieved parties out of court . . . . Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights CT Page 2776 of others are forged in hot controversy, with each view fairly and vigorously represented. See, e.g., Baker v. Carr, 369 U.S. 186,204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Stern v. Stern,165 Conn. 190, 192, 332 A.2d 78 (1973). Maloney v. PAC,183 Conn. 313, 320-21, 439 A.2d 349 (1981). The requirements of justiciability and controversy are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. [Maloney v. Pac, supra, 183 Conn. 321]. As long as there is some direct injury for which the plaintiff seeks redress, the injury that is alleged need not be great. Id.; see Bassett v. Desmond,140 Conn. 426, 432, 101 A.2d 294 (1953). Where the nexus between the injury and the claim sought to be adjudicated is obvious and direct, a plaintiff has standing to maintain the claim. Maloney v.Pac, supra, [183 Conn.] 322.' (Internal quotation marks omitted.)Connecticut Assn. of Health Care Facilities, Inc. v. Worrell,199 Conn. 609, 612-13, 508 A.2d 743 (1986)." Gay Lesbian Law Studentsv. Board of Trustees, 236 Conn. 453, 463-64, 673 A.2d 484 (1996).
The plaintiffs allege that they are "aggrieved by the defendants' actions in that a stay of implementation of revaluation in the City of Norwalk for the assessment year commencing October 1, 1993, will directly result in the increase of the plaintiff's real property taxes, far in excess of what the tax would have been had the proper assessment been made, and to manifestly excessive levels, and will cause irreparable injury for which there is no adequate remedy at law." GTE makes a similar claim. GTE and "[t]he plaintiffs are statutorily aggrieved because § 12-119 provides that an owner may bring an action when he claims `that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property . . . .' General Statutes § 12-119." MacLean v. Town of Darien, 43 Conn. App. 169,172, 682 A.2d 1064 (1996). The plaintiffs, therefore, have standing to maintain this action.
 II
The plaintiffs contend that in the course of staying, or attempting to stay, the implementation of its 1993 revaluation, Norwalk acted illegally. Specifically, the plaintiffs and GTE contend that at its March 8, 1994 meeting, the Norwalk Common Council violated the Freedom of Information Act, that in requesting a stay of implementation from the Secretary of the Office of Policy CT Page 2777 and Management pursuant to General Statutes § 12-117, the defendants failed to comply with the requirements of General Statutes § 12-117, and that Mayor Esposito lacked authority to stay implementation of the 1993 revaluation. The plaintiffs and GTE contend that the Norwalk Common Council's vote, at its June 28, 1994 meeting, did not actually stay implementation of the 1993 revaluation and that if the Norwalk Common Council's vote did effectively stay implementation of the 1993 revaluation, that action did not cure any prior illegal conduct, particularly a stay of implementation of the 1993 revaluation imposed without statutory authority.
 A.
On March 8, 1994, the Norwalk Common Council held a meeting. The plaintiffs assert that the defendants' actions at that meeting violated the Freedom of Information Act. Prior to the meeting, in accordance with General Statutes § 1-21 (a), the Norwalk Common Council had set an agenda, which was made available to the public. This agenda indicated that after the roll call, acceptance of minutes from previous meetings and public participation, Mayor Esposito would address appointments and resignations and make remarks. At the meeting, Mayor Esposito requested authorization to petition the State of Connecticut for a deferment of property revaluation for a period not to exceed three (3) years. Mayor Esposito's motion was carried by a unanimous roll call vote.
The plaintiffs argue that "without providing the public notice or an opportunity to be heard . . . the Common Council agreed to lend [its] endorsement to the Mayor's `freeze' request. Such action was patently improper. Although a public board may, by 2/3 vote, undertake to consider `any other business that may properly come before the [b]oard', to do so without meaningful and sufficiently specific notice of same violates the letter and the spirit of the Freedom of Information laws."[14] The defendants did not brief this issue.
The plaintiffs' contention that the defendants failed to comply with the Freedom of Information laws is grounded in the defendants' alleged violation of General Statutes § 1-21 (a). General Statutes § 1-21 (a) provides, in relevant part, that "[t]he agenda of the regular meetings of every public agency, except for the general assembly, shall be available to the public and shall be filed, not less than twenty-four hours before the meetings to which they refer. . . . Upon the affirmative vote of two-thirds of the CT Page 2778 members of a public agency present and voting, any subsequent business not included in such filed agendas may be considered and acted upon at such meetings."
The remedy for a violation of § 1-21 (a) is itself provided by statute. General Statutes § 1-21i(b)(1) provides, in relevant part, that "[a]ny person . . . denied any other right conferred by sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, 1-20a and 1-21 to1-21k, inclusive, may appeal therefrom to the Freedom of Information Commission, by filing a notice of appeal with said commission." General Statutes § 1-21i(d) provides, in relevant part, that "[a]ny party aggrieved by the decision of said commission may appeal therefrom, in accordance with the provisions of section 4-183." General Statutes § 4-183 (a) provides, in relevant part, that "[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court as provided in this section."
The plaintiffs did not appeal the defendants' alleged violation of the Freedom of Information laws to the Freedom of Information Commission pursuant to General Statutes § 1-21i(b)(1). "[I]t is a settled principle of administrative law that if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter." (Internal quotation marks omitted.) O G Industries, Inc. v.Planning Zoning Commission, 232 Conn. 419, 425, 655 A.2d 1121
(1995); see Lucarelli v. Freedom of Information Commission,29 Conn. App. 547, 552, 616 A.2d 816 (1992), cert. denied,225 Conn. 901, 621 A.2d 284 (1993). Because the plaintiffs did not first appeal the alleged violation of the Freedom of Information Act to the Freedom of Information Commission, this court does not have jurisdiction to entertain this issue.
 B.
The plaintiffs contend that the request submitted by the Norwalk Common Council and Mayor Esposito to the Secretary of the Office of Policy and Management seeking permission to stay implementation of Norwalk's 1993 revaluation failed to comply with General Statutes § 12-117.[15]
The plaintiffs argue that because the request for a stay originated with Mayor Esposito and was approved by the Norwalk CT Page 2779 Common Council, rather than originating with the Board of Tax Review and carrying Mayor Esposito's endorsement, the defendants failed to comply with General Statutes § 12-117.[16] Secretary of the Office of Policy and Management, William J. Cibes, Jr. (Secretary Cibes) did not grant a stay of implementation of Norwalk's October 1, 1993 decennial revaluation. Rather, Secretary Cibes granted the Board of Tax Review a two-month extension to hear taxpayers' appeals.[17] No plaintiff has shown any injury because of that two-month extension, nor has the Secretary of the Office of Policy and Management been made a party to this action. "It is a well-settled general rule that . . . it is not the province of . . . courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." Reynolds v. Vroom, 130 Conn. 512, 515, 36 A.2d 22 (1944). "Mootness implicates the subject matter jurisdiction of this court." Sadlowski v. Manchester, 206 Conn. 579, 583, 538 A.2d 1052
(1988). Because the defendants did not receive a one-year extension, this court cannot afford the plaintiffs any practical relief, and the issue of the defendants' alleged failure to comply with the statutory requirements of General Statutes § 12-117 in requesting that extension is moot.
 C.
The plaintiffs assert that Mayor Esposito lacked authority to unilaterally stay implementation of Norwalk's 1993 revaluation.[18]
As discussed supra, General Statutes § 12-117 confers on the Secretary of the Office of Policy and Management the authority to permit a municipality's "assessors to assess all real estate according to the list in effect immediately prior to the list from which such appeals are taken . . . ." See, e.g., Chamber ofCommerce of Greater Waterbury, Inc. v. Murphy, 179 Conn. 712,427 A.2d 866 (1980). "The general rule is that municipal officers whose authority is defined by statute or charter have no implied powers except such as are necessary to carry into effect the powers expressly conferred on them. This is a general rule of public policy." Bridgeport Brass Co. v. Drew, 102 Conn. 206, 214,128 A. 413 (1925). The rule applies to mayors as it does other municipal officials. Rowland v. Hayes, 124 Conn. 129, 137-138, 198 A. 337
(1938); 3 McQuillin Municipal Corporations (3rd Ed. 1987) § 12.43. "The charter or statute by which the municipality is created is its organic act. Neither the [municipal] corporation nor its officers can do any act . . . not authorized thereby, or by the legislative act applicable thereto. All acts beyond the scope of the powers granted are void." Highgate Condominium Assn v. Watertown FireCT Page 2780District, 210 Conn. 6, 16, 553 A.2d 1126 (1989), quoting 56 Am.Jur.2d, Municipal Corporations § 227 (1971). At the time the mayor purported to "freeze" implementation of the 1993 revaluation, there was nothing in the city charter or in any other statute authorizing him to do so. Moreover, such action was manifestly inconsistent with General Statutes § 12-117 by which the legislature had conferred sole authority to delay implementation of a revaluation on the secretary of the office of policy and management. "Of course, the exercise by the Mayor of any power which he does possess is necessarily conditioned on its not being inconsistent with any applicable State enactment." Bauch v. City of New York,54 Misc.2d 343, 282 N.Y.S.2d 816, 821 (1967). In purporting to unilaterally stay implementation of Norwalk's 1993 revaluation for one year, Mayor Esposito acted without authority. That action is void.
 D.
The plaintiffs assert that the Norwalk Common Council's actions at its June 28, 1994 meeting did not actually stay implementation of the 1993 revaluation. At the June 28, 1994 meeting of the Norwalk Common Council, Councilman Lombardi moved to "authorize the stay of implementation of Norwalk's revaluation for a period not to exceed two years." This motion was carried by a vote of twelve to two. The plaintiffs meticulously analyze the word "authorize," arguing that it "permits a thing to be done in the future, and has mandatory effect or meaning, implying a direction to act." The plaintiffs conclude that authorizing a stay of implementation "does not, however, accomplish the act."
A two-year stay of implementation of a municipality's revaluation can be achieved only by a vote of the municipality's legislature pursuant to Public Act No. 94-4. "General Statutes §1-1 (m) provides, with one exception not relevant here, that `the words "legislative body" . . . as applied to cities and consolidated towns and cities, shall mean the board of aldermen, council or other body charged with the duty of making annual appropriations.'" Town of Stratford v. State Board of Mediation Arbitration, 239 Conn. 32, 48, 681 A.2d 281 (1996). "Furthermore, the term `legislative body' in its normal usage ordinarily means a body that enacts laws." Id., 49. "The common council is the legislative body of the city of Norwalk." J M Realty Co. v.Norwalk, 156 Conn. 185, 189, 239 A.2d 534 (1968); see Gentry v.Norwalk, 196 Conn. 596, 598, 494 A.2d 1206 (1985); RK DevelopmentCorporation v. Norwalk, 156 Conn. 369, 372, 242 A.2d 781 (1968). CT Page 2781 The Norwalk Common Council could not direct anyone else to exercise its legislative discretion to stay implementation of its 1993 revaluation for up to two years. Donnelly v. New Haven,95 Conn. 647, 653, 111 A. 897 (1921) (municipal legislature cannot delegate its legislative function).
"It must be borne in mind, however, that we are dealing with a group of laymen who may not always express themselves with the nicety of a Philadelphia lawyer. Courts must be scrupulous not to hamper the legitimate activities of civic . . . [municipal bodies] by indulging in a microscopic search for technical infirmities in their actions." Couch v. Zoning Commission, 141 Conn. 349, 358,106 A.2d 173 (1954); see Samperi v. Inland Wetlands Agency,226 Conn. 579, 596, 628 A.2d 1286 (1993); Pecora v. Zoning Commission,145 Conn. 435, 445, 144 A.2d 48 (1958); Gulf Oil Corporation v. Boardof Selectmen, 144 Conn. 61, 66, 127 A.2d 48 (1956). "[A] poorly expressed minute should not ordinarily undo the work which otherwise bears the stamp of legality." Couch v. Zoning Commission,
supra, 141 Conn. 359. Although it would have been preferable for the Norwalk Common Council to vote on a resolution to "stay implementation" of the 1993 revaluation for up to two years, the Norwalk Common Council, by its June 28, 1994 vote to "authorize a stay of implementation," clearly manifested its intent to stay implementation of Norwalk's 1993 revaluation.[19]
 E.
The plaintiffs maintain that the Norwalk Common Council's June 28, 1994 action does not cure any prior illegal conduct. The defendants maintain that the action of the City Council on June 28, 1994 ratified the Council's March 8, 1994 action or the mayor's action in staying implementation of the 1993 revaluation.[20]
While the distinction is not dispositive, it is worthy of note that the only action relevant to the defendants' claim of ratification by the Council is the mayor's action in staying the implementation of the 1993 revaluation. The March 8, 1994 action of the Council was a vote to request Secretary Cibes, the secretary of the office of policy and management, to stay implementation of the revaluation. Except for the claim that this action violated the Freedom of Information Act, there is no claim that it was illegal or not binding on the Council itself. "`Ratification means the adoption by a person, as binding upon himself, of an act done in such relations that he may claim it as done for his benefit, although done under such circumstances as would not bind him except CT Page 2782 for his subsequent assent; as where an act was done by a stranger having at the time no authority to act as his agent, or by an agent not having adequate authority. The acceptance of the results of the act with an intent to ratify, and with full knowledge of all the material circumstances, is a ratification.' Ansonia v. Cooper,64 Conn. 536, 544, 30 A. 760 [1894]; Matulis v. Gans, 107 Conn. 562,566, 141 A. 870 [1927]; see 3 Am.Jur.2d, Agency, § 160; Restatement (Second), 1 Agency § 82." Hartford Accident Indemnity Co. v.Windsor Bank, 171 Conn. 63, 72, 368 A.2d 76 (1976). With respect to the action of the Council on March 8, the defendants' claim is not one of ratification but of transmogrification, for which there is no authority.
With respect to the action of the mayor, "[t]he ultra vires act of a municipal corporation cannot be cured by ratification.State ex rel. Fitzroy v. Trustees of Firemen's Relief Fund,122 Conn. 650, 660, 191 A. 729 [1937]." State ex rel. Gaski v. Basile,174 Conn. 36, 40, 381 A.2d 547 (1977). "An act is ultra vires of a municipal corporation . . . when it was not within the power of the corporation to perform it." (Citations omitted; internal quotation marks omitted.) Hartford v. Connecticut Co.,107 Conn. 312, 338, 140 A. 734 (1928). There is no doubt that it was beyond the scope of the corporate power of the city of Norwalk, or of any officer or body thereof, to stay the implementation of revaluation prior to the approval by the Governor of Public Act No. 94-4. Even if Public Act No. 94-4 were deemed to be a curative act,[21]
"[c]urative acts cannot cure a want of authority at all."Montgomery v. Branford, 107 Conn. 697, 705, 142 A. 574 (1928) (later enacted statute could not validate a tax assessment void when made); see State v. Blasko, 202 Conn. 541, 556, 522 A.2d 753
(1987). Since neither the city nor any officer or board thereof had authority to stay the implementation of revaluation prior to the enactment of Public Act No. 94-4, the action of the Council on June 28, 1994 did not ratify any prior stay of implementation of the 1993 revaluation.
 F.
The next issue is whether Public Act No. 94-4 is retrospective. Related to this issue is the plaintiffs' claim that "the adoption of the 1994-1995 operating budget, establishment of mill rates and calculation and issuance of tax bills were done in express derogation of statutes prescribing procedures for them, at a time when the Board of Tax Review had yet to complete its business." General Statutes § 12-122 provides in relevant part that CT Page 2783 "[u]pon completion of the work of the board of tax review and of the final assessment list, the town shall levy a tax on such list. . . ." Thereafter, the tax collector is to make out and sign rate bills containing the proportion which each individual is to pay according to the assessment list. General Statutes § 12-130 (a). The plaintiffs claim the defendants acted unlawfully because they illegally and erroneously acted on the assumption that the 1992 grand list could be used.
It is axiomatic that whether a statute is to be applied retroactively is a matter of legislative intent. Jones Destruction,Inc. v. Upjohn, 161 Conn. 191, 195, 286 A.2d 308 (1971). "[A] statute may have retroactive effect if the legislature so intends."State v. Ross, 230 Conn. 183, 282, 646 A.2d 1318 (1994), cert. denied, 115 S.Ct. 1133, 130 L.Ed.2d 1095 (1995). However, "[i]t is generally presumed that legislation is intended to operate prospectively `[e]xcept as to amending statutes that are procedural in their impact.' Enfield Federal Savings Loan Assn. v. Bissell,184 Conn. 569, 571, 440 A.2d 220 (1981); Darak v. Darak,210 Conn. 462, 467, 556 A.2d 145 (1989)." Mulrooney v. Wambolt,215 Conn. 211, 216, 575 A.2d 996 (1990); see General Statutes § 55-3.[22]
"Statutes should be construed retrospectively only when the mandate of the legislature is imperative." Michaud v. Fitzryk,148 Conn. 447, 449, 171 A.2d 397 (1961).
Although Public Act No. 94-4 does not expressly state that it is retroactive, the mandate of the legislature is imperative. Public Act No. 94-4 by its very terms operates retrospectively. Although that law was approved by the Governor on June 9, 1994, it provides, inter alia: "Any municipality required to implement revaluation for the assessment year commencing October 1, 1993, which has not as of February 15, 1994, adopted mill rates for taxes due July 1, 1994, may use such municipality's most recently completed grand list prior to revaluation as updated by any additions, deletions, splits, combinations and other changes in ownership as of October 1, 1993. . . ." Although Public Act No. 94-4 permits a stay if a municipality has not adopted mill rates as of February 15, 1994, the statute was not signed into law until June 9, 1994. Because Public Act No. 94-4 permits a stay of implementation of a decennial revaluation based on events which occurred prior to its adoption, "the mandate of the legislature is imperative": the General Assembly intended Public Act No. 94-4 to apply retroactively. Therefore, because Public Act No. 94-4 is retroactive, the Norwalk Common Council's June 28, 1994 action CT Page 2784 resulted in a stay of the implementation of Norwalk's 1993 revaluation, pursuant to the provisions of that statute. While it may otherwise have been illegal for the defendants to adopt the 1994-1995 operation budget, establish mill rates and issue tax bills based on the 1992 grand list, the retroactive nature of Public Act No. 94-4 and the action of the Common Council implementing it necessarily cured any illegality. "`[I]t is the situation now rather than the situation at the time of the . . . decision [under review] that must govern.' Regional RailReorganization Act Cases, 419 U.S. 102, 140, 95 S.Ct. 335,42 L.Ed.2d 320 (1974)." Labbe v. Hartford Pension Commission,239 Conn. 168, 184, 682 A.2d 490 (1996).[23]
 III
The plaintiffs and GTE make a multifaceted constitutional challenge to Public Act No. 94-4. Preliminarily, it is well to observe that "a validly enacted statute carries with it a strong presumption of constitutionality. . . . Those who challenge its constitutionality must sustain the heavy burden of proving its unconstitutionality beyond a reasonable doubt. Fleming v. Garnett,231 Conn. 77, 88, 646 A.2d 1308 (1994)." (Internal quotation marks omitted.) Morascini v. Commissioner of Public Safety,236 Conn. 781, 789, 675 A.2d 1340 (1996). Therefore, "in evaluating [a] defendant's challenge to the constitutionality of [a] statute, we read the statute narrowly in order to save its constitutionality, rather than broadly in order to destroy it. We will indulge in every presumption in favor of the statute's constitutionality." (Internal quotation marks omitted.) State v. Defrancesco,235 Conn. 426, 442, 668 A.2d 348 (1995). The court "will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent." Fleming v. Garnett,
supra, 231 Conn. 88.
 A.
The plaintiffs and GTE claim that Public Act No. 94-4 is unconstitutionally vague.[24] They argue that Public Act No. 94-4 lacks any standards by which a municipality may determine when a stay may be imposed. The plaintiffs maintain that "[m]unicipal decisions to postpone implementation of decennial revaluations pursuant to Public Act No. 94-4 were made in a vacuum, without benefit of any guidance, oversight, or suggestion from the General Assembly identifying reasonably distinct boundaries for fairly doing so. This vagueness is constitutionally fatal to Public Act CT Page 2785 No. 94-4." In effect the plaintiffs blend a claim of unconstitutional vagueness with a claim of an unconstitutional delegation of legislative power by the General Assembly.
A claim of an unconstitutional delegation of legislative power is founded on the doctrine of separation of powers. State v.Stoddard, 126 Conn. 623, 626-628, 13 A.2d 586 (1940). Article XVIII of the Constitution of the State of Connecticut, adopted November 24, 1982 and which amended Article Second[25], provides: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another. The legislative department may delegate regulatory authority to the executive department; except that any administrative regulation of any agency of the executive department may be disapproved by the general assembly or a committee thereof in such manner as shall by law be prescribed."[26] Thus, with certain exceptions not relevant here,[27]
"[t]he Constitution of this state provides for the separation of the governmental functions into three basic departments, legislative, executive and judicial, and it is inherent in this separation, since the law-making function is vested exclusively in the legislative department, that the Legislature cannot delegate the law-making power to any other department or agency. In the establishment of three distinct departments of government the Constitution, by necessary implication, prescribes those limitations and imposes those duties which are essential to the independence of each and to the performance by each of the powers of which it is made the depositary. McGovern v. Mitchell,78 Conn. 536, 547, 63 A. 433 [1906]. Although our Constitution contains no specific limitations, relevant to the present inquiry, upon the exercise of legislative power `the limitations . . . are no less real, and perhaps more effective, than if phrased in specific terms.' State v. Conlon, 65 Conn. 478, 489, 33 A. 519 [1895]."State v. Stoddard, supra, 126 Conn. 627. In State v. Stoddard,
which was decided long before the adoption of Article XVIII, the court held that "[a] Legislature, in creating a law complete in itself and designed to accomplish a particular purpose, may expressly authorize an administrative agency to fill up the details by prescribing rules and regulations for the operation and enforcement of the law. In order to render admissible such delegation of legislative power, however, it is necessary that the statute declare a legislative policy, establish primary standards for carrying it out, or lay down an intelligible principle to which the administrative officer or body must conform, with a proper CT Page 2786 regard for the protection of the public interests and with such degree of certainty as the nature of the case permits, and enjoin a procedure under which, by appeal or otherwise, both public interests and private rights shall have due consideration. . . . If the Legislature fails to prescribe with reasonable clarity the limits of the power delegated or if those limits are too broad, its attempt to delegate is a nullity." (Citations omitted.) Id., 628.
In Bottone v. Westport, 209 Conn. 652, 553 A.2d 576 (1989), the Supreme Court held that "[t]he separation of powers doctrine, however, does not pertain to delegations from the state legislature to a municipality. A municipality cannot be considered `any other department or agency' in the context of that phrase in Stoddard; a municipality is not one of the three departments enumerated in the constitution's separation of powers provision. Accordingly, a non-delegation doctrine founded upon the separation of powers doctrine does not pertain by jurisprudential necessity to the delegation of power from the state legislature to a municipality."Id., 664.
However, the Court held that allocation of the legislative power to the state legislature in article third, § 1 of our state constitution together with the due process guarantees of article first, § 8, and amendment seventeen to the constitution of Connecticut and the fifth and fourteenth amendments to the United States constitution form the framework for a constitutional challenge to a delegation of legislative power from the General Assembly to a municipality. Bottone v. Westport, supra,209 Conn. 664-667. "A delegation of power can be challenged on the ground that the statute is unconstitutionally vague under traditional due process analysis." Id., 666. "Specifically, the standard is whether the statute afford[s] a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited." (Internal quotation marks omitted.) Id., 667. In Bottone, the Supreme Court, quoting 1 J. Sutherland, Statutory Construction (4th Ed. Sands 1985) § 4.07, observed that "in delegating power to municipal corporations none of the limitations imposed on administrative or executive agencies applies. Thus, the delegationmay be of the most general nature and it will not be invalid forfailure to create an adequate standard." (Emphasis added; internal quotation marks omitted.) Id., 668-669.
"Such an approach to delegations by a state to a municipality acknowledges the nature and respective resources of state and local governments. It would not be realistic to assume that the state CT Page 2787 legislature could address all of the local concerns in the state. It is clear, however, that the municipality cannot legislate to address local concerns until it is authorized to do so by the state. . . . Thus, in providing local governments with authority to legislate, the state necessarily must grant municipalities the power to act with broad discretion within the framework of the delegated authority. The state legislature may give a municipality the power to fill in the details of police power legislation that addresses particularized, local concerns." (Citations omitted; internal quotation marks omitted.) Bottone v. Westport, supra,209 Conn. 669-670.
"Now we must apply this standard for state legislature to municipality delegations to the present case." Bottone v. Westport,
supra, 209 Conn. 671. There can be no serious question that Public Act No. 94-4 satisfies the rarified due process test for vagueness restated in Bottone: whether the statute affords a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited. Public Act No. 94-4 states that the local legislative body of a municipality, by a two-thirds vote, may stay the implementation of such municipality's revaluation for a period or periods not to exceed in the aggregate two years. "Adequate standards" for the implementation of this grant of power are unnecessary. Id., 668-669. A "distressed municipality" may approve such a stay by a majority vote.[28] If a municipality implements such a stay, it may continue to use the prior year's grand list. "Any municipality required to implement revaluation for the assessment year commencing October 1, 1993, which has not as of February 15, 1994, adopted mill rates for taxes due July 1, 1994, may use such municipality's most recently completed grand list prior to revaluation as updated by any additions, deletions, splits, combinations and other changes in ownership as of October 1, 1993, provided any such municipality may commence a phase-in of its revaluation pursuant to subsection (e) of section 12-62a or section12-62c with respect to such assessment year and may after the first year of such phase-in stay the further implementation of such phase-in in accordance with the provisions of this section." Similarly, if a municipality is due to implement a revaluation commencing October 1, 1994, and has not as of February 15, 1995, adopted a mill rate for taxes due July 1, 1995, it may use its most recently completed grand list prior to revaluation as updated by any additions, deletions, splits, combinations and other changes of ownership as of October 1, 1994. A municipality which had previously voted to defer all or any part of the amount of increase in the assessed value of real property as approved by the CT Page 2788 legislative body of such municipality, pursuant to General Statutes §§ 12-62 (e) or 12-62c, and which has not as of June 9, 1994, adopted a mill rate for taxes for July 1, 1994, may stay the further implementation of such phase-in. Public Act No. 94-4 further provides that if the General Assembly did not enact property tax reform during its 1995 legislative session, then "each municipality which has stayed the implementation of revaluation or phase-in of revaluation shall recommence the implementation of such revaluation or phase-in upon the expiration of any stay implemented. . . ."
Because Public Act No. 94-4 affords a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited, the court holds that the statute does not effect an unconstitutional delegation of power and is not unconstitutionally vague.
 B.
The plaintiffs allege that Public Act No. 94-4 violates their equal protection rights under the state and federal constitutions. The plaintiffs, however, fail to brief this claim.[29] Any claim of error which is not briefed is considered abandoned. State v. Ruiz,171 Conn. 264, 265, 368 A.2d 222 (1976); Grace Community Church v.Planning Zoning Commission, 42 Conn. Sup. 256, 259, 615 A.2d 1092
(1992); Massimo v. Planning Commission, 41 Conn. Sup. 196, 197,564 A.2d 1075 (1989); Mangels v. Commissioner of Motor Vehicles,40 Conn. Sup. 226, 227, 487 A.2d 1121 (1984); see also Practice Book § 285A.[30]
In its trial brief GTE does state that Public Act No. 94-4 "is unconstitutional in that it violates the equal protection clauses of the 14th Amendment to the United States Constitution and ArticleFirst, Sections 1 and 20 of the Connecticut Constitution." However, GTE fails to allege this claim in its complaint. "The principle that a plaintiff may rely only upon what he has alleged is basic.Lundberg v. Kovacs, 172 Conn. 229, 232, 374 A.2d 201 (1977);Willametz v. Guida-Seibert Dairy Co., 157 Conn. 295, 302,254 A.2d 473 (1968). `It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint. Nash Engineering Co. v. Norwalk, 137 Conn. 235, 239,75 A.2d 496 [1950].' Malone v. Steinberg, 138 Conn. 718, 721,89 A.2d 213 (1952)." Matthews v. F. M. C. Corp., 190 Conn. 700, 705,462 A.2d 376 (1983). CT Page 2789
Nonetheless, the defendants not only have not objected to GTE's equal protection claim, but have themselves briefed the issue. The court considers this a waiver of GTE's failure to plead the issue in its complaint; cf. Scribner v. O'Brien, 169 Conn. 389,405, 363 A.2d 160 (1975); and will address the claim since it significantly impacts the public interest; Sassone v. Lepore,226 Conn. 773, 778, 629 A.2d 357 (1993); and because the plaintiffs have given notice to all interested persons that they are challenging the constitutionality of Public Act No. 94-4.
"The equal protection provisions of the federal and state constitutions have the same meaning and limitations." (Internal quotation marks omitted.) State v. Leary, 217 Conn. 404, 409,587 A.2d 85 (1991). "The first step in confronting the plaintiffs' equal protection argument is to ascertain whether the rational basis test or the more stringent strict scrutiny test applies."Gallacher v. Commissioner of Revenue Services, 221 Conn. 166, 181,602 A.2d 996 (1992). "When a statutory classification impinges upon an inherently suspect class or affects a fundamental personal right, the statute is subject to strict scrutiny and is justified only by a compelling state interest." Keogh v. Bridgeport,187 Conn. 53, 66, 444 A.2d 225 (1982). Since Public Act No. 94-4 does not affect a suspect class or fundamental interest, the rational basis test is applicable. Frazier v. Manson, 176 Conn. 638, 646-647,451 A.2d 408 (1979). This is the test usually applied to tax legislation. United Illuminating v. New Haven, 179 Conn. 627, 637-38,427 A.2d 830 (1980), appeal dismissed, 449 U.S. 801,101 S.Ct. 45, 66 L.Ed.2d 5 (1980). "In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, . . . the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, . . . and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational. . . . This standard is especially deferential in the context of classifications made by complex tax laws. [I]n structuring internal taxation schemes the States have large leeway in making classifications and drawing lines which, in their judgment, produce reasonable systems of taxation." (Citations omitted; internal quotation marks omitted.) Nordlinger v. Hahn, 505 U.S. 1, 11,112 S.Ct. 2326, 120 L.Ed.2d 1 (1992); see also D.A. Pincus Co. v.Meehan, 235 Conn. 865, 876-77, 670 A.2d 1278 (1996).
Ordinarily, in order to determine whether a statutory scheme violates the equal protection clause, "a court must consider three CT Page 2790 factors: `the character of the classification in question; the individual interests affected by the classification; and the governmental interests asserted in support of the classification.'Dunn v. Blumstein, 405 U.S. 330, 335, 92 S.Ct. 995, 31 L.Ed.2d 274
(1972)." Bruno v. Civil Service Commission, 192 Conn. 335, 345,472 A.2d 328 (1984). GTE does not identify any classification embodied in Public Act No. 94-4 which renders any person treated differently than any other. Rather, GTE argues that "the effect of Public Act
No. 94-4 is to treat owners of real property differently depending upon whether their property is commercial in nature, a residential condominium, or a single family residence." (Emphasis added.)
"Most laws classify and many affect groups unevenly." Keogh v.Bridgeport, supra, 187 Conn. 66. When facially neutral legislation is subjected to equal protection attack, an inquiry into intent is necessary to determine whether the legislation in some sense was designed to accord disparate treatment on the basis of suspect considerations. Harris v. McRae, 448 U.S. 297, 326, 100 S.Ct. 2671,65 L.Ed.2d 784 (1980). "The equal protection component of theFifth Amendment prohibits only purposeful discrimination,Washington v. Davis, 426 U.S. 229, and when a facially neutral . . . statute is challenged on equal protection grounds, it is incumbent upon the challenger to prove that [the legislature] `selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group. ' Personnel Administrator of Mass. v.Feeney, 442 U.S. 256, 279. There is no evidence to support such a finding of intent in the present case." Id., 324 n. 6; cf. Hunt v.Prior, 236 Conn. 421, 443-444, 673 A.2d 514 (1996). This is so whether we examine the legislative intent of the General Assembly which authorized the legislation or the legislative intent of the Norwalk City Council which implemented the stay of the revaluation pursuant to that authorization. While the legislative history of Public Act, May Special Session, No. 94-4 does not address the particular intent behind § 51, that history does reflect that the intent behind the legislation as a whole was to provide property tax relief.[31] With respect to the defendant City of Norwalk, the evidence proves that the Norwalk City Council voted to stay its decennial revaluation of real property because of a shift in the tax burden to single family home owners from non-single family property owners which would result.[32] It chose this course, however, not to burden commercial property owners but to alleviate the burden on single family home owners, that is, "in spite of" not "because of" the burden which would be assumed by non-single family property owners. More, these were policy choices which both CT Page 2791 democratically elected legislatures were entitled to make, free of constitutional restraints. Nordlinger v. Hahn, supra, 505 U.S. 1;United Illuminating Co. v. New Haven, supra, 179 Conn. 627.
In Nordlinger v. Hahn, supra, 505 U.S. 1, California had adopted by statewide ballot initiative an "acquisition value" system of taxation, whereby property was reassessed up to the current appraised value upon new construction or a change in ownership. Over a period of about ten years, this acquisition-value system created immense disparities in the taxes paid by persons owning similar pieces of property. Longer term property owners paid lower taxes based on a lower assessment, while newer owners of similar property paid much higher taxes based on a more recent assessment. The United States Supreme Court held that this did not violate the Equal Protection Clause of the Fourteenth Amendment because "the State has a legitimate interest in local neighborhood preservation, continuity and stability. . . . The State therefore legitimately can decide to structure its tax system to discourage rapid turnover in ownership of homes . . ., for example, in order to inhibit displacement of lower income families by the forces of gentrification." (Citations omitted.) Id., 12.
Similarly, in United Illuminating Co. v. New Haven, supra,179 Conn. 627, the Connecticut Supreme Court upheld against an equal protection challenge the constitutionality of General Statutes (Rev. 1979) § 12-62a(e) whereby a city was authorized to phase in an increase in property assessments over a five year period if, in any year, its total assessments, as a result of a decennial revaluation, are at least 30% greater than its assessments for the previous year. Said the court: "It cannot be assumed that the legislature could not have reasonably concluded that by the coincidence of §§ 12-62 (revaluation required every ten years) and12-62a(b) (uniform assessment rate of 70 percent) of the General Statutes numerous owners of real property might have been faced with a dramatic and sudden increase in taxes. Because of the coincidence of these statutes, not only is appreciation in realty which accrued over a period of years being compressed into a single revaluation, but also assessment is imposed at a uniform rate of 70 percent of true and actual value (a rate which is higher than that previously imposed at least by the city). Perhaps to ameliorate the potential hardship and deleterious consequences on the social structure of certain communities that the above statutes might impose — for example, numerous foreclosures — the legislature enacted [General Statutes (Rev. 1979) § 12-62a(e)]. This is a legitimate purpose for governmental action." Id., 643. "The legislature may CT Page 2792 well-have feared that although appreciation in the value of [certain] property may have been gradual over the years, the cumulative appreciation may have been so substantial that when reflected in the subsequent assessment, forced sales, foreclosures, and other conceivable hardships might result." Id., 646.
In United Illuminating, the court addressed the claim that the statutory classification between real property which had appreciated in value classification and that which had not "violates equal protection because, inter alia, `those whose real property has increased sufficiently in value will be subsidized by those owners of real property which has decreased, remained the same or increased less in value.'" Id., 647. Said the court: "Although such a `subsidy' may result from the act and ordinance, the classification does not constitute a denial of equal protection of the laws because of the existence of at least the following conceivable rational bases. To achieve the purpose of mitigating the burden of increased assessments of real property in a revaluation year, a logical distinction exists between pieces of realty which have appreciated since the prior revaluation and those which have not. The legislature might have reasonably believed that only owners of appreciated property potentially would face a significant "double barrel" tax impact resulting from the coincidence of the legislation involving mandatory periodic revaluation; General Statutes § 12-62; and that imposing a uniform assessment rate; General Statutes § 12-62a(b). Owners of unappreciated property would be in less need of protection from a sudden and dramatic increase in tax burden. Likewise, the distinctions between pieces of real property which have appreciated more than others are rational." Id., 647-648.
For like reasons, neither the action of the General Assembly nor the action of the Norwalk City Council denied GTE of equal protection of the law.
 C.
The plaintiffs next claim that Public Act No. 94-4 is an unconstitutional retroactive tax. The United States Supreme Court "repeatedly has upheld retroactive tax legislation against a due process challenge. See, e.g., United States v. Hemme, 476 U.S. 558
[, 106 S.Ct. 2071, 90 L.Ed.2d 538, appeal dismissed,476 U.S. 1166, 106 S.Ct. 2884, 90 L.Ed.2d 973] (1986); United States v.Darusmont, 449 U.S. 292 (1981); Welch v. Henry, 305 U.S. 134 [,59 S.Ct. 121, 82 L.Ed. 87] (1938); United States v. Hudson,
CT Page 2793299 U.S. 498 (1937); Milliken v. United States, 283 U.S. 15 (1931); Cooperv. United States, 280 U.S. 409 (1930)." United States v. Carlton,512 U.S. 26, 30, 114 S.Ct. 2018, 2021-22, 129 L.Ed.2d 22 (1994). "`Taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract. It is but a way of apportioning the costs of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens. Since no citizen enjoys immunity from that burden, its retroactive imposition does not necessarily infringe due process . . .'Welch v. Henry, [supra, 305 U.S. 146-47]. Accordingly, courts recognizing the power of taxation as an attribute of government essential to the raising of necessary revenue hold that retroactive tax laws be valid even though they impair vested rights. Parlato v.McCarthy, 136 Conn. 126, 130, 69 A.2d 648 [(1949)]; see Rahr v.Smith, 243 Wis. 497, 11 N.W.2d 355 [(1943)]; 85 C.J.S., Taxation, 1092(b)." Wiegand v. Heffernan, 170 Conn. 567, 576-77,368 A.2d 103 (1976); see also Gunther v. Dubno, 195 Conn. 284, 299-300,487 A.2d 1080 (1985).
The two principal United States Supreme Court cases which invalidated a retroactive tax in this century are Blodgett v.Holden, 275 U.S. 142, 48 S.Ct. 105, 72 L.Ed.2d 206 (1927), modified, 276 U.S. 594 (1928), and Untermyer v. Anderson,276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645 (1928). These, however, were gift tax cases, involving the very first gift tax levied, and the gifts in question were made and completely vested before the enactment of the taxing statute. United States v. Darusmont, 449 U.S. 292, 299,101 S.Ct. 549, 66 L.Ed.2d 513 (1981); cf. Parlato v. McCarthy,136 Conn. 126, 69 A.2d 648 (1949).
Although the consistency with which the United States Supreme Court has since upheld retroactive tax legislation over the past seventy years suggests that Blodgett and Untermyer may have become obsolete Lochner-era cases,[33] limited to their facts or implicitly overruled, the Court has continued to acknowledge that "[s]ome of its decisions have stated that the validity of a retroactive tax provision under the Due Process Clause depends upon whether retroactive application is so harsh and oppressive as to transgress the constitutional limitation. Welch v. Henry, [supra,305 U.S. 147], quoted in United States v. Hemme, [supra, 476 U.S. 568-69]. The harsh and oppressive formulation, however, does not differ from the prohibition against arbitrary and irrational legislation that applies generally to enactments in the sphere of economic policy.Pension Benefit Guaranty Corp. v. R. A. Gray Co., 467 U.S. 717,733 (1984). The due process standard to be applied to tax statutes CT Page 2794 with retroactive effect, therefore, is the same as that generally applicable to retroactive economic legislation: Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches. . . . To be sure, . . . retroactive legislation does have to meet a burden not faced by legislation that has only future effects. . . . The retroactive aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former. . . . But that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose. Id., at 729-730, quoting Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 16-17
(1976)." (Internal quotation marks omitted.) United States v.Carlton, supra, 512 U.S. 31. "One of the relevant circumstances is whether, without notice, a statute gives a different and more oppressive legal effect to conduct undertaken before enactment of the statute." United States v. Hemme, supra, 476 U.S. 569.
As discussed supra, Public Act No. 94-4 is rationally related to a legitimate legislative purpose, alleviating a sudden increase in the property tax burden from single family homeowners and the consequences for neighborhood preservation, continuity and stability that would result from the failure to do so. Nordlingerv. Hahn, supra, 505 U.S. 12; United Illuminating Co. v. New Haven,
supra, 179 Conn. 645-648. Since these effects of the decennial revaluation of property values would relate back to October 1, 1993, the retroactive application of the legislation is justified by a rational legislative purpose.
It also is relevant that Public Act No. 94-4 is not legislation that "without notice . . . gives a different and more oppressive legal effect to conduct undertaken before enactment of the statute." United States v. Hemme, supra, 476 U.S. 569. That is, there is no evidence that either the plaintiffs or GTE did or refrained from doing something in reliance on the expectation that their property would be subject to a decennial revaluation.
Other circumstances are relevant to this court's conclusion that neither the plaintiffs nor GTE have suffered different and oppressive treatment as a result of the legislation. United Statesv. Hemme, supra, 476 U.S. 571. First, the very nature of their complaint is peculiar when it is seen that Public Act No. 94-4, rather than changing the nature of the property tax, merely CT Page 2795 authorized the continuation of the assessment basis established in the prior revaluation. Far more substantive retroactive changes in tax laws have been upheld. United States v. Hemme, supra,476 U.S. 558 (retroactive elimination of the lifetime gift tax exemption of $30,000 deductible from amounts otherwise not unconstitutional);United States v. Darusmont, supra, 449 U.S. 292 (retroactive amendments of the minimum tax provisions of the Internal Revenue Code increasing the rate of the minimum tax and decreasing the allowable exemption as to enumerated items of tax preference, including the deduction for 50% of any net long-term capital gain, not unconstitutional). The position of GTE, and that of the plaintiffs, is far different from that of the individual who, as Judge Learned Hand stated, "has no reason to suppose that any transactions of the sort will be taxed at all." Cohan v.Commissioner, 39 F.2d 540, 545 (2nd Cir. 1930), quoted in UnitedStates v. Darusmont, supra, 449 U.S. 298. Second, the propriety of the ad valorem property tax has been the subject of intense and ongoing debate in Connecticut for over two decades. Under the circumstances of this case, the plaintiffs and GTE cannot reasonably claim surprise. See Milliken v. United States,283 U.S. 15, 22, 24, 51 S.Ct. 324, 75 L.Ed. 809 (1931); First FederalSavings Loan Assn. v. Connelly, 142 Conn. 483, 491, 115 A.2d 455
(1955), appeal dismissed, 350 U.S. 927, 76 S.Ct. 305, 100 L.Ed. 811
(1956). Indeed, prior to the enactment of Public Act No. 94-4, there already existed statutes by which the city of Norwalk could have deferred all or part of the increase in assessments resulting from the revaluation; General Statutes § 12-62a(e, f)[34]; or could have imposed a property tax surcharge of 15% on property classified as commercial, industrial or utility. General Statutes § 12-62d
(b).[35] Third, it is relevant that Public Act No. 94-4 was retroactive only to the start of the tax year in which it was enacted. Cf. United States v. Darusmont, supra, 449 U.S. 292;Atlantic Coast Line R. Co. v. Daughton, 262 U.S. 413, 425,43 S.Ct. 620, 67 L.Ed. 1051 (1923) (taxing statute not impermissibly retroactive though not enacted until March but laid a tax based upon the net income of the calendar year); Wiegand v. Heffernan,
supra, 170 Conn. 576; Burke International Research Corp. v.Lindley, 58 Ohio St.2d 27, 387 N.E.2d 1227 (1979). "This limited retroactive application is of no consequence." Kellems v. Brown,163 Conn. 478, 510, 313 A.2d 53 (1972), appeal dismissed,409 U.S. 1099, 93 S.Ct. 911, 34 L.Ed.2d 678 (1973). Nor is this a case of a statute, without notice, giving a different and more oppressive effect to conduct undertaken before enactment of the statute.United States v. Hemme, supra, 476 U.S. 569. The retroactive effect of Public Act No. 94-4 does not violate the Due Process Clause. CT Page 2796
 D.
Finally, the plaintiffs argue that "[b]ecause the retroactive feature of Public Act No. 94-4 unlawfully impairs Plaintiffs' vested substantive right to appeal the doings of the municipal assessor to the municipal board of tax review and from the board of tax review to superior court, such provision is unconstitutional." In addition, the plaintiffs note that General Statutes § 12-117a is the exclusive remedy for overvaluation. Therefore, the plaintiffs claim that they "and taxpayers with legally cognizable claims of overassessment, based on the utilization of outdated or otherwise inaccurate property valuations were, by operation of Public Act No. 94-4 precluded from pursuing redress of their grievances. The lawful sessions of the boards of review had expired, leaving it impossible for grievants to perfect the jurisdictional prerequisite of petitioning the local board before an appeal with court pursuant to Connecticut General Statutes § 12-117a." Similarly, GTE maintains that Public Act No. 94-4 "deprives the plaintiffs of vested substantive rights to appeal the actions of the municipal assessor to the Board of Tax Review, and from the Board of Tax Review to the Superior Court."
These claims are old wine in new bottles, albeit creatively designed bottles. "A vested right is one that equates to legal or equitable title to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exception from a demand made by another. Manchester EnvironmentalCoalition v. Stockton, 184 Conn. 51, 71, 441 A.2d 68 (1981)." (Emphasis in original.) Rudewicz v. Gagne, 22 Conn. App. 285, 290,582 A.2d 463 (1990).
The plaintiffs would like to contest the 1983 revaluation in light of the changes in market conditions demonstrated by the 1993 revaluation. In essence, the plaintiffs are seeking an interim revaluation based on changes in market conditions. Generally, however, an adjustment to an assessment to reflect fluctuations in property values resulting solely from changes in market conditions is an impermissible interim revaluation. Pauker v. Roig,232 Conn. 335, 342, 654 A.2d 1233 (1995).
In Uniroyal, Inc. v. Board of Tax Review, 182 Conn. 619, 629-30,438 A.2d 782 (1981), the court stated that "[i]n Connecticut, the remedy for variations in the effect of market conditions on different parcels is set forth in General Statutes 12-62. The CT Page 2797 remedy of revaluation was established by the legislature and it was the judgment of the legislature that the remedy need only be available once each decade. See Bassett v. Rose, [141 Conn. 129,135, 104 A.2d 212 (1954)]. . . . [A]s a practical matter, assessors cannot be expected to revalue every year, even though changes which affect property values may occur within a given year.' Kays, Inc.v. Board of Tax Review, [170 Conn. 477, 480, 365 A.2d 1207
(1976)]." Therefore, variations in property values "accruing within ten-year periods is a permissible variation under the legislative scheme for assessment. General Statutes § 12-62. We have said that: `Tax assessors are required to recognize and act on the principle that the true value of a fixed asset such as real estate is fairly constant and must be gauged, not by conditions temporary and extraordinary, but by those prevailing over a period of time, and the assessors, in listing values of property for taxation, may, to a certain extent, disregard the excesses of a boom as well as the despair of a depression. Alfred J. Sweet, Inc. v. Auburn,134 Me. 28, 32, 180 A. 803.' Burritt Mutual Savings Bank v. NewBritain, 146 Conn. 669, 677-78, 154 A.2d 608 (1959)." Uniroyal,Inc. v. Board of Tax Review, supra, 182 Conn. 629. In RalstonPurina v. Board of Tax Review, 203 Conn. 425, 525 A.2d 91 (1987), the Supreme Court reaffirmed its holding in Uniroyal that a municipality is not obligated to adjust the plaintiffs' tax assessments during interim years between decennial revaluations of real property to account for fluctuations in property values resulting solely from changes in market conditions.[36]
That the legislature has in Public Act No. 94-4 and succeeding legislation authorized stays or extensions of the decennial revaluation does not distinguish this case from Ralston Purina andUniroyal. A person does not have a vested right in a statutory remedy which is not grounded in the common law. See Rybinski v.State Employees' Retirement Commission, 173 Conn. 462, 472,378 A.2d 547 (1977); Rocky Hill Convalescent Hospital, Inc. v.Metropolitan District, 160 Conn. 446, 456-57, 280 A.2d 344 (1971);Bahr Corporation v. O'Brion, 146 Conn. 237, 246, 149 A.2d 691
(1959); State v. Vashon, 140 Conn. 478, 485, 101 A.2d 509 (1953);Neilson v. Perkins, 86 Conn. 425, 428, 85 A. 686 (1913); compareGentile v. Altermatt, 169 Conn. 267, 282-287, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S.Ct. 763, 46 L.Ed.2d 631
(1976); Massa v. Nastri, 125 Conn. 144, 147 3 A.2d 839 (1939). Specifically, "the taxpayer cannot have any vested right in the remedy granted by [the legislature] for the correction of an error in taxation." The Collector v. Hubbard, 79 U.S. (12 Wall.) 1, 14,20 L.Ed. 272 (1870), reversing Hubbard v. Brainard, 35 Conn. 563, CT Page 2798 576 (1869). Notably, "[t]his is not an instance in which plaintiffs have gained vested rights or equities through reliance upon statutory provisions prior to" the enactment of Public Act No. 94-4.C. S.E. A., Inc. v. Connecticut Personnel Policy Board,165 Conn. 448, 455, 334 A.2d 909 (1973).
Due process of law requires that a taxpayer have notice and opportunity for a hearing as to the assessment of a tax against his property at some stage of the proceedings. Turner v. Wade,254 U.S. 64, 67, 41 S.Ct. 27, 28, 65 L.Ed. 134 (1920); see also Londoner v.Denver, 210 U.S. 373, 386, 28 S.Ct. 708, 52 L.Ed. 1103 (1908);Central of Georgia v. Wright, 207 U.S. 127, 28 S.Ct. 47,52 L.Ed. 134 (1907). The plaintiffs and GTE had just such an opportunity after the 1983 assessment. That assessment has not been effectively changed. They may not appeal that assessment even though it has continued longer than they may have expected. Public Act No. 94-4 does not deprive the plaintiffs or GTE of vested rights or due process of law.
 IV
The plaintiffs and GTE assert the same claims of unconstitutionality with respect to Public Act No. 95-283 § 8 and Public Act No. 96-218 as they have with respect to Public Act 94-4. Public Act No. 95-283 § 8 and Public Act No. 96-218 each amended General Statutes § 12-62h, which codified Public Act No. 94-4, so as to, inter alia, enable the legislative body of a municipality to extend the stay of implementation of the decennial revaluation, beyond that provided for in Public Act No. 94-4, and to enable the municipality to continue to use its most recently completed grand list prior to revaluation.[37] The facts relevant to Norwalk's implementation of Public Act No. 95-283 § 8 and Public Act No. 96-218 are contained in a supplemental stipulation of the parties recited above at note 7.
For two reasons, this court cannot entertain the parties' claims with respect to Public Act No. 95-283 § 8 and Public Act No. 96-218. First, no allegations with respect to Public Act No. 95-283 § 8 and Public Act No. 96-218 are alleged in the complaint. A stipulation of facts cannot expand the plaintiffs' right of recovery beyond the allegations of the complaint. Seymour HousingAuthority Tenants Assn. v. Housing Authority, 18 Conn. App. 393,404 n. 10, 558 A.2d 1002 (1989). "[F]acts found but not averred cannot be made the basis for a recovery." (Citations omitted; internal quotation marks omitted.) Id.
CT Page 2799
Second, the plaintiffs seek a declaratory judgment as well as relief under General Statutes § 12-119. All interested parties have not been given notice that Public Act No. 95-283 § 8 and Public Act No. 96-218 are being challenged in this action. "General Statutes § 52-29 authorizes the Superior Court to adjudicate declaratory judgment actions and delegates to the judiciary the task of making rules to govern such actions. One of the prerequisites to a declaratory judgment is that `all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof.' Practice Book § 390(d). `"Under [Practice Book § 390(d),] all such persons even though their presence is not necessary to a decision of the issues between the parties of record are required either to be made parties or to have reasonable notice of the action. Where they are reasonably within the reach of the process and are not so numerous that it would impose an unreasonable burden upon the plaintiff they should be made parties; but if they or some of them are not reasonably available for service or to summon them or all of them into the action would put upon the plaintiff a burden he ought not fairly to be asked to assume, the provision for reasonable notice applies. ". . .' . . . Benz v. Walker, 154 Conn. 74, 78, 221 A.2d 841 (1966)." (Emphasis omitted.) AIU Insurance Company v. Brown,42 Conn. App. 363, 368, 679 A.2d 983 (1996). With respect to the claims of the plaintiffs and GTE relating to Public Act No. 94-4, notice by publication was given to all Norwalk taxpayers and certified letters were sent to the chief executive officers of the other 168 Connecticut municipalities. However, no order of notice was sought nor is there any evidence that notice was given to these persons with respect to any claim pertaining to Public Act No. 95-283 § 8 or Public Act No. 96-218. "Without compliance with § 390(d), the trial court lacks jurisdiction over the matter. Serrani v. Board ofEthics, 225 Conn. 305, 308, 622 A.2d 1009 (1993)." Patriot GeneralInsurance Co. v. Normandie, 41 Conn. App. 66, 67, 674 A.2d 861
(1996). For this reason, the court cannot consider the plaintiffs' arguments for declaratory relief with respect to Public Act No. 95-283 § 8 or Public Act No. 96-218. Scinto v. Stamm,42 Conn. Sup. 144, 152, 605 A.2d 898 (1992), affirmed, 224 Conn. 524,620 A.2d 99 (1993), cert. denied, ___ U.S. ___, 114 S.Ct. 587,126 L.Ed.2d 484 (1993); see Walsh v. City of Bridgeport, 2 Conn. Sup. 88
(1935).
Judgment may enter for the defendants.
BY THE COURT
CT Page 2800
Bruce L. LevinJudge of the Superior Court